Walter CRESON *v.* Brenda Sue CRESON

CA 95-79                                      917 S.W.2d 553

Court of Appeals of Arkansas
Division II
Opinion delivered March 20, 1996

*Nolan, Cadell & Reynolds, P.A.*, by: *Fred Caddell*, for appellant.

*Gean, Gean, & Gean*, by: *Roy Gean, Jr.*, for appellee.

WENDELL L. GRIFFEN, Judge. Walter Creson has appealed the August 22, 1994, decree entered in the Sebastian County Chancery

Court on October 12, 1994, that divided real and personal property between him and his ex-wife due to their divorce. Appellant also challenges the chancellor's findings regarding child support that he has been directed to pay. We have conducted a *de novo* review of this case, and conclude that the chancellor's findings are not clearly erroneous. Therefore, we affirm the decree.

The parties were married on November 27, 1976, were separated on April 25, 1994, and are parents of two children named Ellen Creson (born September 27, 1977) and Caleb Creson (born May 27, 1980). Appellee filed for divorce on May 11, 1994, on the grounds of general and personal indignities, and was granted a divorce upon her petition. She was awarded custody of the children, and appellant was ordered to pay child support at the rate of $102.00 per week. The divorce decree also dissolved the tenancy by the entirety by which the parties held their marital residence, and granted appellee possession and use of the residence until any of three events occurs: (a) the youngest child graduates from high school; (b) appellee ceases to live in the residence; or (c) appellee cohabits there with someone to whom she is not married. In any event, the decree provides that the residence will be sold with the equity being divided equally. Appellee will receive credit for one-half of the principal reduction that occurs from the time of entry of the decree until the sale of the residence. Appellee was awarded title to the 1987 Honda Accord automobile that was debt-free; appellant was awarded title to the 1992 Toyota truck that was subject to a debt of almost $10,000, and the parties were awarded joint ownership of the 1980 Dodge Omni automobile driven by their daughter.

One aspect of appellant's challenge to the property distribution made by the chancellor pertains to $3,800 that has been described as "inherited property." Appellant inherited approximately $27,000 after his parents died. The money was placed in a joint account in the names of appellant and appellee. When the divorce decree was issued, approximately $3,800.00 remained in the account. Appellant argues that the chancellor erred in finding that this sum became joint property that could be distributed equally between the parties upon their divorce.

Appellant's contention requires that we determine whether he produced clear and convincing evidence that he did not intend to bestow a gift of the inheritance money to rebut the presumption of gift that arises whenever one spouse places property

in a joint account with the other spouse. *Lofton* v. *Lofton*, 23 Ark. App. 203, 745 S.W.2d 635 (1988). Similarly, the law presumes that when personal property is placed in the names of both husband and wife, the property is held by them as tenants by the entirety. *Boggs* v. *Boggs*, 26 Ark. App. 188, 761 S.W.2d 956 (1988). To support a finding that such property is "separate property" for purposes of property distribution upon divorce, the party seeking to rebut either presumption must present clear and convincing evidence that the property was separately owned. In either event, the requirement of clear and convincing evidence means that the proponent seeking to rebut the presumption must do so by proof so clear, direct, weighty and convincing that the fact finder is able to come to a clear conviction, without hesitation, of the matter asserted. Clear and convincing evidence is that degree of proof that will produce in the trier of fact a firm conviction respecting the allegation sought to be established. *Maxwell* v. *Carl Bierbaum, Inc.*, 48 Ark. App. 159, 893 S.W.2d 344 (1995). In *McLain* v. *McLain*, 36 Ark. App. 197, 820 S.W.2d 295 (1991), we defined clear and convincing evidence as:

> evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details is exact and in due order, and whose testimony is so direct, weighty, and convincing as to enable the fact finder to come to a clear conviction, without hesitation, of the truth of the facts related.

36 Ark. App. at 199-200.

We agree with the chancellor that appellant failed to produce clear and convincing evidence to rebut the presumption, and therefore conclude that the chancellor's finding is not clearly erroneous. The record shows that although appellee did not deposit or withdraw funds from the joint account that contained the $3,800 balance, appellant engaged in several actions that support a finding that he either bestowed a gift of the money to appellee, or created a tenancy by the entirety in it. He deposited the money in a joint account with her after his mother died. When the parties later decided to refinance the residence that was acquired during their marriage and, therefore, held by them as a tenancy by the entirety, appellant withdrew $22,000 of the money from the joint account and paid it toward the refinancing. He contends that this money was separate property because appellee agreed that he would be repaid that amount whenever the residence was sold. Appellee

concedes that she told him that the money would be repaid when the resale occurred. The chancellor, however, found that the funds had been so intermingled as to become a gift. We do not consider that finding to be clearly erroneous given that the record shows that the "inheritance money" was deposited in a joint account and was deliberately invested in the marital residence by the refinancing transaction. There was also proof that appellant used money from the joint account on other purchases, such as video equipment, which became marital property. We hold, therefore, that the chancellor's finding that the $3,800 balance should be divided equally is not clearly erroneous.

■ We uphold the chancellor's finding on this point, mindful that the parties testified at trial to an agreement between them that appellant would be repaid the $22,000 that was used from the joint account to refinance their marital residence. Appellant argues that their agreement was clear and convincing proof that the money was separate property. While appellee conceded that she agreed that the $22,000 would be repaid when the marital residence was resold, she argues that this agreement was merely to accommodate appellant and avoid further discussions. The chancellor had this proof before him when he made the finding regarding the joint account, and he resolved the credibility questions concerning it. We do not find his reasoning clearly erroneous. Indeed, appellant's argument is unconvincing when one considers that he took admittedly separate property inherited from his parents, deposited it in joint property—an account—with appellee, then withdrew $22,000 of it to invest in more joint property—their residence—that he knew was property held as a tenancy by the entirety.

Appellant also challenges the chancellor's decisions concerning the use of the marital residence, and the distribution of automobiles that the parties own. As stated earlier, appellee was awarded possession of the residence until the younger child completes high school, she (appellee) ceases living in the residence, or she cohabits there with someone to whom she is not married. In any event, the residence shall be sold, the equity divided equally, and appellee is to be credited with half the reduction on the principal owed from the date of the divorce decree until the date of sale. Appellant argues that because the outstanding indebtedness is only $22,000, appellee could conceivably make a substantial reduction in the principal during this time period that would effectively increase her financial

position, while appellant will not receive a similar benefit from the rent that he pays for his residence over that time span. He contends that, upon the divorce, the chancellor should have directed that the residence be sold, and that the sale proceeds be divided equally so that the parties could each use them to acquire their own residences.

■ It is true that all marital property is to be divided equally between the divorcing parties pursuant to Ark. Code Ann. § 9-12-315(a)(1)(A), and that the chancellor must state in the order or decree dealing with the property division why property is not distributed equally. However, the residence is property that was held as a tenancy by the entirety, a fact conceded by counsel for appellant during oral argument. As such, that estate was automatically dissolved when the final decree was rendered, unless the chancellor specifically provided otherwise, pursuant to Ark. Code Ann. § 9-12-317 (Supp. 1995).

■ In this case, subject to the conditions already mentioned, the chancellor gave appellee possession of the marital residence. We find no error in that decision, or in the property distribution whereby appellee will be credited with the reduction in the principal owed on that property before the proceeds of its sale are divided between the parties, whenever the sale occurs. Appellee does receive a benefit, to some extent, that appellant will not enjoy. However, she must also bear a burden that he does not undertake. The chancellor decreed that appellee shall be responsible for all mortgage payments, taxes, insurance, and upkeep costs for that property during the time that she enjoys possession. Those costs are predictable insofar as the mortgage payments and taxes are concerned, less predictable as far as insurance costs are concerned, and wholly unpredictable concerning upkeep. Whether the costs will involve plumbing bills incurred because of frozen water pipes, repairs to the residence after a natural disaster, expenses incurred to maintain the appearance and marketability of the residence, or any of the other foreseeable events incidental to home ownership, the chancellor has placed the entire burden of meeting them on appellee. The decree does not require appellant to contribute any part of those costs, either at the time they are incurred or by debiting his share of the equity whenever the house is sold. If those costs exceed whatever benefit appellee is deemed to gain from the property distribution method adopted by the chancellor, appellant has no

obligation to even the burden. We do not find that result clearly erroneous.

■ We also find no error in the chancellor's decision awarding appellee the Honda Accord that was debt-free, while awarding appellant the Toyota truck with its indebtedness. We do not view Ark. Code Ann. § 9-12-315 (Supp. 1995) to compel mathematical precision in property distribution, only that marital property be distributed equitably. The chancellor is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is how the total assets are divided. *See Canady* v. *Canady*, 290 Ark. 551, 721 S.W.2d 650 (1986). The chancellor is given broad powers, under the statute, to distribute all property in divorce cases, marital and non-marital, in order to achieve an equitable distribution. *Smith* v. *Smith*, 32 Ark. App. 175, 798 S.W.2d 442 (1990). The vehicle that appellant was awarded has the burden of its indebtedness and the benefit of being a 1992 model, contrasted to the 1987 model vehicle that appellee was awarded. The chancellor was entitled to take that issue, among others, into account when making the property distribution, and we do not find his decision to be clearly erroneous.

Finally, appellant argues that the chancellor miscalculated his take-home pay, and that the miscalculation resulted in an inflated child support payment. The chancellor based the decision to require child support payments of $102.00 per week after analyzing appellant's wage earnings over a thirty-one-week period of time. Appellant contends that the chancellor should have used a twelve-week period to determine his earnings for purposes of the child support award. The two methods produce a twelve dollar difference per week in the child support obligation ($102.00 per week using the thirty-one-week calculations versus $90 per week using the twelve-week method).

■ The amount of child support lies within the sound discretion of the chancellor, and his finding will not be disturbed on appeal, absent a showing that he abused his discretion. *Scroggins* v. *Scroggins*, 302 Ark. 362, 790 S.W.2d 157 (1990). The chancellor made the child support order after receiving evidence of appellant's earnings from his job, as well as proof that he earned income from separate property held with his sisters. We find no abuse of discretion in the decision to consider the longer period of thirty-one

weeks in order to obtain a better perspective of appellant's earnings.

Affirmed.

JENNINGS, C.J., and ROBBINS, J., agree.