Lonnie Wayne COPELAND *v.* Barbara Elaine COPELAND

CA 03-482 139 S.W.3d 145

Court of Appeals of Arkansas
Division III
Opinion delivered December 17, 2003

*Osment Law Firm,* by: *Pamela Osment,* for appellant.

*Cullen & Co. PLLC,* by: *Tim Cullen,* for appellee.

ANDREE LAYTON ROAF, Judge. Lonnie Copeland has appealed from an order of the Faulkner County Circuit Court dividing the parties' retirement and pension plans in a divorce. On appeal, Lonnie Copeland argues that the trial court erred in (1) failing to divide the retirement and pensions equally and, (2) failing to give reasons for an unequal division. We agree that the trial court erred, and therefore, reverse and remand.

Lonnie Copeland and Barbara Copeland divorced on April 11, 2002, after twenty-four years of marriage. Prior to the divorce, the parties entered into a property-settlement agreement on March 13, 2002, purporting to distribute all marital property equally, except for their retirement accounts. Paragraph six of the agreement states:

> The parties have reserved the issue of the division of the Plaintiff's SBC Savings and Security Plan; the Plaintiff's SBC Pension/Retirement Benefit; the Southwestern Bell Stock; and any retirement, 401K and/or pensions benefits the Defendant may have earned until the parties can gather some more information on these

benefits. The Defendant shall make a good faith effort to determine whether he has retirement benefits and provide this information to his attorney so that it may be provided to the Plaintiff's attorney within thirty (30) days of the date of this hearing. Upon receipt of this information, if the parties cannot agree on the division of the retirement benefits herein referred to, they shall seek relief from the Court and the Court retains jurisdiction until this matter is adjudicated.

The pension plans that are the subject of this appeal include an annuity that will pay Barbara $946.68 per month upon retirement; Barbara's SBC Savings and Security Plan worth approximately $32,000; Barbara's Paysop Plan valued at approximately $2,000; and an annuity from Safeway Stores that would pay Lonnie $250.13 per month. The trial court also considered pension funds of approximately $93,000, which Lonnie took as an early withdrawal in 2000, prior to the filing of the divorce action.

At the hearing on the division of the retirement and pension plans, Barbara testified that she had worked for Southwestern Bell (SBC) for twenty-five years. She stated that through her employment with SBC she has earned the retirement benefits, to which she does not have access until she retires. She stated that she has not withdrawn anything from the funds and does not have any other retirement or stock-option benefits. Barbara also testified that for the majority of the marriage she was the primary provider, supplying medical insurance, providing "most of the monthly income for financial stability" and payment for bills, and that this allowed Lonnie to "pursue his other interests." She asked that the court allow her to keep all of her retirement benefits in light of the above circumstances and the fact that Lonnie received a meat business in the settlement, and because the pension that she receives at retirement will be her only source of income. She also has custody of the parties' minor daughter, and the parties' older daughter and grandchild also currently reside with her. Barbara also indicated that Lonnie had not been forthcoming about his retirement benefits from his previous employment with Safeway Stores, Inc., and that only after the divorce did she discover that he was entitled to retirement benefits from Safeway Stores.

Lonnie also testified at the hearing. He testified that he has an annuity benefit from his employment with Safeway that will provide him with $250.13 per month upon retirement. He also

stated that he does not have any other retirement funds that he had not disclosed. Lonnie testified that he took early distribution from a retirement fund in 2000 from his employment with Tinken Company, where he worked for thirteen years until the company closed and moved its operations to Mexico. He testified that after federal taxes, the $93,000 distribution amounted to "seventy something," and that the couple paid an additional $14,000 in state taxes on the funds. He testified that of what was left, seventy-five percent of it was used to pay off "our stuff that my ex-wife now has possession of, her Jeep, the furniture, two credit cards that she had possession of, uh, two Sears bills, and, I kept five thousand ($5,000) for my business, and I paid off my three thousand dollar ($3,000) truck, and the rest of it, we spent." Lonnie stated that he had always held a job throughout his twenty-four years of marriage. He requested an equal division of the pension funds remaining after the divorce was filed, "considering [his] was divided equally."

After hearing the testimony, the trial court purported to divide all plans "equally," including Lonnie's early distribution. The court first stated that the property division statute does not require mathematical precision, but requires an equitable division of the marital property. The court then explained that it had added the two retirement funds ($90,000 and $30,000) and divided them evenly, and that a fifty-fifty split would thus be $60,000. The court stated that after considering taxes and the use of 75% of the $90,000 for marital debt, the retirement funds would in effect be equally distributed if each party retained their remaining separate retirement funds. The court concluded that Barbara was therefore entitled to keep her roughly $30,000 in pension funds and that Lonnie had, essentially, received the benefit of his half from the early distribution. The court noted that after taxes Lonnie was left with $60,000 net, that the parties had paid some marital debts and that Lonnie retained $15,000 for himself, and finally concluded that "everybody walks out of here like they walked in today." The trial court made no reference whatsoever to the parties' two vested annuities, and when asked for findings as to why there should be an "inequitable division," the trial court stated:

> Oh, I'm thinking it is equitable. That's what I'm ruling that I do think, after it's all said and done, it was an equitable division of the ninety thousand dollars. I added the ninety thousand plus the thirty-two thousand. *If you split that fifty/fifty*, that's sixty thousand apiece. She takes her thirty thousand. After taxes, *he had sixty*

*thousand* out of the ninety thousand is what I'm coming up with. *And, so I do think they're equal.* It may not be exactly to the penny, *but I think it's an equitable division as it is now.* I think he used the money to acquire marital assets prior to the divorce, which were split and agreed in a property settlement. *So, I think that issue's out of there.* I think they used that money to acquire- and that leaves us with— where we are today, and I think that's—I guess my ruling is that I think it's an equitable split. [Emphasis added.]

I can give you a more formal ruling, later on, if you want that, and findings of fact. I'll be happy to do that. But, I think that's where I am right now. I do think it's an equitable division.

The trial court did not make formal findings of fact, however, the order entered by the trial court states in pertinent part:

That each party shall keep as their own separate property their respective retirement and pension plans. This Court specifically finds that this is an equitable division of the marital property, considering all of the facts, including but not limited to the fact that the Defendant withdrew his pension plan prior to the dissolution of the marriage.

Lonnie Copeland appeals from the trial court's order purporting to equitably divide the parties' retirement and pension funds.

On appeal, Lonnie argues that the trial court abused its discretion in failing to divide the funds equally, and in failing to give its reasons for making such an unequal division. In this regard, Lonnie contends that the trial court used the terms "equal" and "equitable," interchangeably, and that it included his retirement funds, already divided in the parties' agreement and no longer in existence, in its calculations in such a way as to count those funds twice. Lonnie further contends that the trial court gave Barbara her $34,000 retirement funds plus the $946.68 monthly annuity, and only the $250.13 monthly to him, called it "equitable" yet gave no reason for the unequal division. We agree with all of Lonnie's contentions.

 This court reviews division of marital property cases *de novo. Glover v. Glover,* 4 Ark. App. 27, 627 S.W.2d 30 (1982). The trial court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley,* 76 Ark.

App. 150, 61 S.W.3d 219 (2001). The overriding purpose of Arkansas Code Annotated section 9-12-315 is to enable the court to make a division of property that is fair and equitable under the specific circumstances. *Id.* Arkansas Code Annotated section 9-12-315 (Repl. 2002) provides that marital property is to be divided equally unless it would be inequitable to do so. *Harvey v. Harvey,* 295 Ark. 102, 747 S.W.2d 89 (1988). If the property is divided unequally, then the court must give reasons for its division in the order. Ark. Code Ann. § 9-12-315(a)(1)(B) (Repl. 2002); *Harvey v. Harvey, supra.* The code also provides a list of factors the court may consider when choosing unequal division. Ark. Code Ann. § 9-12-315(a)(1)(A)(i)-(ix) (Repl. 2002). This list is not exhaustive. A trial judge's unequal division of marital property will not be reversed unless it is clearly erroneous. *Keathley v. Keathley, supra.*

■ ■ Arkansas Code Annotated section 9-12-315 does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Creson v. Creson,* 53 Ark. App. 41, 917 S.W.2d 553 (1996). The trial court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is *how the total assets are divided. Id.* (Emphasis added.) The trial court is given broad powers, under the statute, to distribute all property in divorce cases, marital and non-marital, in order to achieve an equitable distribution. *Id.*

From our review of the record, we cannot say whether the trial court intended to make an equal, or unequal and equitable, division of the parties' pension funds. Although the trial court's written order states that allowing the parties to keep their respective retirement and pension plans is an "equitable" division of the marital property, we note that the trial court, in making his calculations, first purported to make the parties' cash funds "equal," and did so by including Lonnie's funds withdrawn prior to the filing of the divorce. The trial court's written order did state that it considered the early withdrawal of Lonnie's pension as a factor. However, the trial court in its oral ruling stated that Lonnie's funds were "split and agreed to in a property settlement. So I think that issue's out of there." Further, the trial court included all of the federal and state taxes assessed for early withdrawal in its calculations, and, inexplicably, made no mention of or attempt to factor in the wide disparity in monthly benefits between the parties' two vested annuity plans. Lonnie's monthly annuity

was approximately one-fourth of the value of Barbara's, and it appears that the trial court simply ignored the disparity in these benefits in its findings and in making its calculations.

Furthermore, the retirement benefits remaining to be divided by the court comprised only part of the total amount of marital property owned by the parties. The parties' settlement agreement purported to divide all marital property equally except Barbara's retirement benefits, and any benefits Lonnie "may have earned," in connection with which Lonnie was to make a good faith effort to determine whether he had any retirement benefits. It is undisputed that both parties were aware that Lonnie's benefits through his employment with Tinken Company had been disposed of prior to the filing of the divorce and were not among the assets to be divided by the trial court. Barbara instead sought an unequal division in her favor of the remaining funds. In this respect, there is no evidence in the record to establish the value of the substantial amount of marital property divided between the parties by agreement, including businesses and race horses, and little evidence on the parties' respective incomes or the other factors that the trial court is to consider pursuant to Ark. Code Ann. § 9-12-315(a)(1)(A) (Repl. 2002) when it makes a distribution other than one-half to each party.

■■ On *de novo* review of a fully developed record, when we can plainly see where the equities lie, we may enter the order that the trial court should have entered. *Reaves v. Reaves*, 63 Ark. 187, 975 S.W.2d 882 (1998). However, from the record before us, we cannot say whether it was error for the trial court to make what was essentially a grossly disproportionate distribution of the marital retirement assets remaining after the settlement in favor of Barbara. The record is simply not fully developed. Accordingly, we reverse and remand this case for further proceedings. On remand, the trial court may permit the introduction of such additional evidence as is necessary to make findings regarding the valuation of all of the parties' assets and the factors to be considered pursuant to Ark. Code Ann. § 9-12-315 (Repl. 2002). We also remand in order that the trial court may clearly articulate whether it is making an equal or unequal distribution of assets, and if unequal, the reasons why such distribution is equitable.

Reversed and remanded.

PITTMAN and ROBBINS, JJ., agree.