Raymond L. BAXLEY *v.* Susan B. BAXLEY

CA 04-1131 212 S.W.3d 8

Court of Appeals of Arkansas
Opinion delivered September 7, 2005

*D. Scott Hickam*, for appellant.

*Hobbs, Garnett, Naramore & Drake, P.A.*, by: *Ronald G. Naramore*, for appellee.

DAVID M. GLOVER, Judge. This is the second appeal in this divorce case contesting the division of certain financial accounts between appellant, Raymond Baxley, and appellee, Susan Baxley, who were married in July 1990 and divorced in June 2003. The parties entered into a property-settlement agreement regarding most of their marital assets, agreeing (1) that Susan got the bank accounts in her name, a 1998 Oldsmobile, two four-wheelers, the marital home (which she owned prior to the marriage), and property in Montgomery County; (2) that Raymond got the trailer, truck, and boat, as well as his fishing tackle, two muzzle loaders, ammunition, his clothing and the bank accounts and other accounts in his name; and (3) that Susan kept all remaining personal property at the residence. The only assets at issue are two accounts in Susan's name with Edward Jones, which are rollovers of her retirement accounts. Prior to their marriage, the accounts were valued at $22,257.65; at the time of the divorce, one account was valued at $232,846.95, and the other account was valued at $9275.07.

The court heard testimony regarding the retirement accounts on May 27, 2003. Raymond attended the hearing but did not testify. He had undergone open-heart surgery two weeks prior to the hearing.

Susan testified at the hearing that she and Raymond were very happy for a number of years after they got married. At the time of the marriage, and during the marriage, Raymond did not work due to injuries he had received in a 1989 automobile accident, although he had worked prior to the marriage for a pest-control company and as a fishing guide. Raymond began to

receive social-security disability in 1991; Susan testified that the checks were around $700 per month at first and that the most recent ones were $889 per month. Susan worked as a registered nurse during the marriage until she suffered a stroke in October 2001, and she was terminated from her position after using all of her leave time. At the time of the hearing, Susan was receiving approximately $1440 per month in social-security disability. Susan also was receiving a $280 per month UNUM disability, but she testified that those private payments only lasted eighteen months and that she began receiving the payments in October 2001.

Susan testified that she and Raymond maintained a joint checking account during the marriage, that her paychecks and his disability checks were deposited in the account, and that Raymond had "free run" of the account. She said that Raymond wrote "on average" $300-$600 per month in checks. She said that she paid out of the joint checking account the mortgage payments on the house they lived in during their marriage, which she owned, and that she was still making mortgage payments.

At the hearing, the trial judge awarded 100% of the contested accounts to Susan because "they're from her sole earnings." In her ruling from the bench on May 27, 2003, the trial judge stated:

> The Court looks to the factors set forth under A.C.A. § 9-12-315, concerning division of property in determining whether the Edward Jones accounts should be equally divided for the period from the time of marriage to the divorce. First of all, the length of the marriage was twelve, almost thirteen years. I have been married thirty-four years. It doesn't seem extremely long. As to age, health, and station in life, you have two individuals whose health is truly deteriorating. Although Mrs. Baxley seems very strong and has a good strong will, it still may be that she may have some unforeseen medical expenses that she might have difficulty trying to pay for. I know that my 89-year-old mother is relatively very healthy, but her Medicare doesn't always cover her expenses. As to amount and sources of income, they're both on social security. According to Exhibit 1, her income was always a great deal higher than his so her social security is appropriately higher. As to vocational skills and employability, they both did hard work, but she had a more advanced degree as far as her earnings.

After looking at number 2 in 9-12-315 and each of these factors, the Court does deem that it would be appropriate to have an unequal division and to allow the plaintiff to keep as her sole and separate property these two accounts because they're from her sole earnings. During their thirteen year marriage she allowed her husband to have the fruits of her employment, but now she needs to have the fruits of her employment for her future medical expenses. ... Primarily, he's 66 and she's 60 and she had planned many more years of work, but it didn't happen. They're both on social security and they both will be using Medicare. I do not feel that it is inequitable to have this unequal division.

Raymond appealed the trial court's decision to this court, and in an unpublished opinion delivered May 12, 2004, this court reversed and remanded the trial court's decision, holding:

[S]imply reciting the source of the funds [did not] equate to a proper consideration of the contribution of each party in the acquisition, preservation, or appreciation of marital property. Although Ms. Baxley's earnings were the source of the funds in the investment account, the trial court's order makes no finding as to the contribution *of each party* as contemplated by Ark. Code Ann. § 9-12-315(a)(1)(A)(vii). In fact, the order makes no finding at all concerning Mr. Baxley's contribution, or lack thereof, and, consequently, there is no explanation as to why an equal division of the marital property was inequitable. In the absence of such an explanation, and in light of the presumption that marital property will be divided equally, we must reverse and remand for entry of an order that demonstrates proper consideration of the statutory factors.

The dissent asserts that the directions in the opinion from this court upon remand, in which Judge Baker was the writing judge, "clearly indicated that we were seeking identification by the trial judge of contributions including those of a non-monetary nature." It appears that this court's opinion upon remand was not as clear to the trial court as the dissent claims, because upon remand from this court, the trial judge again awarded Susan 100% of the two retirement accounts, stating:

This is a case where the Court of Appeals found that the Court needed to state the reasons for its finding of an unequal distribution of marital property. I don't think we need an evidentiary hearing. I failed to give specific reasons why I had an unequal distribution. I thought I did when I stated that Mr. Baxley enjoyed the fruits of

Mrs. Baxley's labor. There was evidence presented that he spent on his own personal use from 1994 to 1995 $6400 and that's what he did every year of the marriage.

He had the benefit of her labor and earnings. If you look at the exhibit showing how much she earned, how much was put in the investment account, and how much the employer contributed and then you look at how much he earned, clearly she earned significantly more than he did. Her earnings could go for the food, some of the utilities, and certainly, his earnings went for something. Clearly, I think he benefitted from her income throughout the marriage.

If you multiply $6400 times twelve, it doesn't equal his one-half, but it's pretty close. Based on her testimony and the fact that he didn't testify, those are the factors. I need to specifically say why I made the findings I made and that is what the Court of Appeals guided and instructed me to do.

Mrs. Baxley was trying to build herself whatever she could from her earnings, but she was also very generous with the Defendant. Mrs. Baxley testified that she paid the bills, she knew what the opening balance was, she knew what the end balance was, and he liked to have cash on hand, and he did. He wrote checks for cash.

Raymond now appeals the trial court's decision after remand, arguing again that the trial court was clearly erroneous in awarding both of the retirement accounts to Susan. We agree with Raymond that the trial court judge was clearly erroneous when she failed to divide the marital portion of Susan's two retirement accounts equally and instead awarded the entire amount to Susan.

In *Copeland v. Copeland*, 84 Ark. App. 303, 307-08, 139 S.W.3d 145, 148-49 (2003) (citations omitted), this court set forth its standard of review for property division in divorce cases:

This court reviews division of marital property cases *de novo*. The trial court has broad powers to distribute property in order to achieve an equitable distribution. The overriding purpose of Arkansas Code Annotated section 9-12-315 is to enable the court to make a division of property that is fair and equitable under the specific circumstances. Arkansas Code Annotated section 9-12-315 (Repl. 2002) provides that marital property is to be divided equally unless it would be inequitable to do so. If the property is divided

unequally, then the court must give reasons for its division in the order. The code also provides a list of factors the court may consider when choosing unequal division. This list is not exhaustive. A trial judge's unequal division of marital property will not be reversed unless it is clearly erroneous.

Arkansas Code Annotated section 9-12-315 does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. The trial court is vested with a measure of flexibility in apportioning the total assets held in the martial estate upon divorce, and the critical inquiry is *how the total assets are divided*. (Emphasis added.) The trial court is given broad powers, under the statute, to distribute all property in divorce cases, marital and non-marital, in order to achieve an equitable distribution.

The factors listed in section 9-12-315(a)(1)(A), although not an exhaustive list, include the length of the marriage; age, health and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income-tax consequences of the court's division of property.

In the present case, the parties had been married for almost thirteen years, and Raymond was already disabled at the time of the marriage. Raymond began receiving disability payments after the parties married. Susan worked as a nurse until her own health problems rendered her unable to work any longer as well. Now both parties are unable to work due to health issues, and both parties are receiving social-security disability. Susan testified that all of their sources of income went into a joint checking account, to which both parties had access. Susan received the house the parties lived in during the marriage, which was her house prior to marriage; however, Raymond was not given credit for any decrease of the amount of the mortgage during the duration of the marriage.

Furthermore, Susan's two retirement accounts grew from a little over $22,000 at the time of the marriage to over $240,000 at the time of the divorce almost thirteen years later. Susan also increased her annual contributions from less than $3000 in 1990 to almost $9000 in 2001, which resulted in a significant increase in her retirement savings during the course of the marriage.

The dissent states that the trial court calculated how much money Raymond spent during the marriage "purely on his own whims while the necessities of housing, food utilities, etc. were being provided for solely by [Susan's] contributions" and that it was " 'pretty close' to one-half of what was in the retirement account." The only testimony about what Raymond spent came from Susan at the hearing, and she testified that for the previous nine months, Raymond had written checks that averaged $300 to $600 per month. She also testified that Raymond's disability checks were $889 per month. The dissent assumes that Susan never spent any money "on a whim," since it disparages Raymond for spending less than the amount of his disability income. It would appear that the parties did not look at each other's income as "hers" and "his" until divorce proceedings were instigated, as evidenced by the fact that they deposited both of their checks into one checking account, which became "theirs." The dissent's implication that Raymond was a drain on Susan's income is unwarranted, especially in light of the fact that this approach to marriage worked for the parties for almost thirteen years.

Susan relies upon *Stout v. Stout*, 4 Ark. App. 266, 630 S.W.2d 53 (1982), in support of her position that she should retain all of her retirement funds. In *Stout*, this court affirmed the unequal distribution of an IRA in favor of the husband, holding that the fact that the husband was the person who contributed to the account was an acceptable reason to divide the account unequally. However, in *Stout* the wife received alimony for a period of one year, and this court pointed out that she had worked in various employment over the years and that she had the ability to earn a living. Mrs. Stout also received a generous property settlement, and the trial court found that the divorce was entirely her fault, a fact that this court held was warranted by the facts contained in the record.

The dissent asserts that we have misinterpreted the *Stout* holding. To the contrary, in reality the dissent has contorted that holding, where the trial court's specific holding with respect to Mr. Stout's IRA was, "The Court is not ordering that sold because we must consider Mr. Stout. He's getting along in years too, and *it's a retirement fund at [sic] he has built up.*" (Emphasis added.) At the time, this court held that was an acceptable reason for refusing to divide the IRA. The dissent now attempts to read various reasons

into the refusal to divide Mr. Stout's IRA when in fact the trial court's reason was simply because it was a retirement fund *that he had built up*. (Emphasis added.)

Subsequent to *Stout*, however, in *Stuart v. Stuart*, 280 Ark. 546, 660 S.W.2d 162 (1983), our supreme court held that it was not inequitable to treat property held in the wife's name, which was acquired during the marriage, as marital property to be divided equally when the wife was the primary breadwinner in the marriage. *Stuart*, decided the year after *Stout*, reiterated our appellate courts' erasure of property division based upon gender-based distinctions, regardless of who was the "primary breadwinner."

Although recognizing that the trial judge could divide marital property unequally if it was found that an equal division would be inequitable, Judge George Rose Smith, writing for the Arkansas Supreme Court in *Day v. Day*, 281 Ark. 261, 663 S.W.2d 719, (1984), ruled that absent a valid reason, spouses must be treated equally. In that case, our supreme court also held that

> [E]arnings or other property acquired by each spouse must be treated as marital property, unless falling within one of the statutory exceptions, and neither one can deprive the other of any interest in such property by putting it temporarily beyond his or her own control, as by the purchase of annuities, participation in a retirement plan, or other device for postponing full enjoyment of the property.

*Day*, 281 Ark. at 268, 663 S.W.2d at 722.

We are not unmindful of the fact that the contribution of each party in the acquisition of marital property is a factor to be considered by the trial judge in making a division of marital property. However, this should not be the sole factor considered. It is obvious from the trial judge's comments, both at the hearing and upon remand, that she awarded Susan 100% of the retirement accounts simply because Susan was the person who earned the money placed into the accounts. This is in direct contravention of the holdings in *Stuart, supra*, and *Day, supra*, and to the extent that *Stout, supra*, is in conflict with this opinion, it is overruled.

Our holding today in no way precludes an unequal division of retirement accounts or deferred compensation accounts if the facts so warrant, *e.g.*, if the account assets are retained by one party in exchange for other assets; however, we hold that the facts in the instant case do not justify such an unequal division. The parties

were married for almost thirteen years; Raymond was disabled at the time of the marriage and began receiving disability payments after the marriage; Susan was able to invest more into her retirement accounts after the marriage commenced; and this approach to the marriage worked until Susan had a stroke and lost her job. Now both parties are receiving social-security disability, and their financial outlooks are strained. We decline to hold that Susan's disability and need for financial security is more pressing than Raymond's disability and similar need simply because she was the "primary breadwinner" and made contributions to her retirement accounts.

We reverse and remand for entry of an order directing that the marital portion of the retirement accounts be divided equally between Raymond and Susan.

Reversed and remanded to enter an order consistent with this opinion.

PITTMAN, C.J., GLADWIN and BIRD, JJ., agree.

VAUGHT and BAKER, JJ., dissent.

KAREN R. BAKER, Judge, dissenting. I dissent from the majority's reversal of this case because the trial judge's findings in support of the unequal distribution of the wife's retirement accounts were not clearly erroneous. The trial judge on remand found that the retirement accounts were accumulated by the wife through her employment, the husband made no contribution to their acquisition, and the husband benefited from the income of the wife throughout their marriage. Additionally, the court found no evidence that the defendant made any substantial contribution to the marital estate. In our decision remanding the case we held:

> While we agree that no specific number of factors need be given, we disagree that simply reciting the source of the funds equates to a proper consideration of the contribution of each party in the acquisition, preservation, or appreciation of marital property. Although Ms. Baxley's earnings were the source of the funds in the investment account, the trial court's order makes no findings as to the contribution *of each party* as contemplated by Ark. Code Ann. § 9-12-315(a)(1)(A)(vii). (Emphasis added.) In fact, the order makes no finding at all concerning Mr. Baxley's contribution, or lack thereof, and, consequently, there is no explanation as to why an equal division of the marital property was inequitable. In the

absence of such an explanation, and in light of the presumption that marital property will be divided equally, we must reverse and remand for entry of an order that demonstrates proper consideration of the statutory factors. *See Harvey v. Harvey*, 295 Ark. 102, 747 S.W.2d 89 (1988) (holding that the failure of the trial judge to explain why marital property was divided unequally between the parties required reversal and remand of award).

This quoted section of our opinion contained a footnote emphasizing that these contributions may be non-monetary. *See Davis v. Davis*, 79 Ark. App. 178, 84 S.W.3d 447 (2002) (one spouse's contribution to the marital property through providing household services, rearing children, and attending to other spouse's health needs was of equal value to the other spouse's producing income through farm labor and contributed to the farm's appreciation in value); *cf. Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001) (finding that there was no contribution to the martial property by the spouse in cleaning up after himself and taking care of the finances where his handling of the finances enabled him to defraud the other spouse by incurring debt in her name without her knowledge).

Our directions on remand indicated that we were seeking identification by the trial judge of contributions including those of a non-monetary nature. Non-monetary contributions were critical in the analysis of both *Stout v. Stout*, 4 Ark. App. 266, 630 S.W.2d 53 (1982) and *Stuart v. Stuart*, 280 Ark. 546, 660 S.W.2d 162 (1983). Neither *Stuart* nor *Stout* awarded marital property based on gender or upon identification of the primary breadwinner. Instead, our court in *Stout* emphasized that the alienation of the parties resulted in a lack of contribution to the marital estate by the wife. The wife in *Stout*, like the husband in *Keathley*, used marital resources during the course of the marriage and then by her actions caused a loss to the marital estate. Furthermore, because she and her husband maintained separate households during much of the marriage, there was no evidence of non-monetary contributions on her part such as household services or love and affection to support his monetary acquisitions.[1]

---

[1] If *Stout* is interpreted as holding that an unequal division of marital assets can be made on the basis of gender or by identification of the primary breadwinner, I join the majority in saying it should be overruled.

In *Stuart* the trial court's equal division of property was also affirmed based upon consideration of non-monetary contributions to the marital estate:

About 20 years after the parties were married Mrs. Stuart brought this suit for divorce, on the ground of indignities. Stuart did not contest the divorce, but he did resist his wife's assertion that she was entitled to more than half of the marital property because she had been the principal breadwinner. This appeal is from the chancellor's equal division of all the marital property, some of which had been acquired jointly and some in Mrs. Stuart's name only.

At the time of their marriage Stuart was a painter and Mrs. Stuart a court reporter. Stuart suffered a work-related injury that kept him from working most of the time. He took care of the house and yard, did most of the cooking, worked when he was able to, and helped in his wife's business by proofreading and delivering transcripts. Mrs. Stuart worked steadily as a regular or free-lance court reporter, earning about two thirds of the family income. She testified that she knew what is meant by a feme sole and as such intended to acquire separate property in her own name.

The chancellor was right in dividing the marital property equally. The appellant relies in part on our constitutional provision that a married woman may acquire and transfer property as if she were a feme sole, with such property being free from her husband's debts. Ark. Const. art. 9, § 7 (1874). That provision was meant to put a wife on an equal footing with her husband in the acquisition and transfer of property, but it does not purport to clothe the wife with superior property rights in the event of a divorce.

Well before the many recent cases disapproving gender-based distinctions between spouses, we recognized the power of the court in a divorce case to divide property acquired by the joint efforts of the parties, even though title was in the name of only one spouse. *Stephens v. Stephens,* 226 Ark. 219, 288 S.W.2d 957 (1956). That principle has been embodied in our recent statute governing the division of marital property, Act 705 of 1979, for it directs the court to consider "services as a homemaker" (usually those of the wife) as a contribution to the acquisition of property during the marriage.

Ark. Stat. Ann. § 34-1214(A)(1)(8) (Supp. 1983). We have said that the new statute was made applicable to all cases filed after its

effective date and necessarily affected property acquired before that date. *Warren v. Warren,* 273 Ark. 528, 623 S.W.2d 813 (1981). If that were not so, equality between the sexes might not be achieved for a generation or more. The constitutionality of similar statutes has recently been upheld in several states, not only because public policy supports the recognition of the homemaker's efforts as contributing to the acquisition of property during the marriage, but also because under pre-existing law a married person had no reasonable expectation that his or her property would be immune from an equitable division upon termination of the marriage. *Kujawinski v. Kujawinski,* 71 Ill.2d 563, 17 Ill.Dec. 801, 376 N.E.2d 1382 (1978); *Fournier v. Fournier,* 376 A.2d 100 (Me.1977); *Rothman v. Rothman,* 65 N.J. 219, 320 A.2d 496 (1974). We agree with those decisions.

As a second point for reversal the appellant argues that it is inequitable to divide the property equally when her earnings formed the greater part of the purchase price. To sustain that argument in this case would put the law right back where it was before gender-based distinctions were nullified, for the same contention would be made when it was the husband who had been the breadwinner — the usual situation.

*Stuart v. Stuart,* 280 Ark. at 162-63, 660 S.W.2d at 547-49.

Unlike *Stuart,* in this case there was no evidence before the trial judge that the husband took care of the house and yard, did most of the cooking, worked when he was able to, or otherwise helped his wife in any way. More like the wife in *Stout,* the evidence was that his spouse supported him during the course of the marriage, while he contributed nothing to the acquisition of marital assets, monetarily or otherwise. Nothing in the trial judge's findings indicates that her decision to make an unequal distribution of the retirement account was based on gender. Nor does it appear that the decision was based on a finding that the wife was the principal breadwinner during the marriage.

The trial judge on remand calculated how much money the husband in this case spent during the course of the marriage purely on his own whims while the necessities of housing, food, utilities, etc., were being provided for solely by the wife's contributions. Based on her calculations, the trial judge reached a figure that was "pretty close" to one-half of what was in the retirement account. Furthermore, the wife had become disabled during the marriage,

was younger than the husband, and would be unable to continue working to earn the income she had previously enjoyed. In contrast, the husband was disabled prior to the marriage and his earning potential was unchanged.

Given the trial judge's findings after consideration of these factors, in accordance with our directions on remand, the decision to make an unequal division of the retirement account was not clearly erroneous and should be affirmed.

VAUGHT, J., agrees.