
# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-16-64

| | |
|---|---|
| | **Opinion Delivered** August 31, 2016 |
| A. POWELL SANDERS<br>APPELLANT | APPEAL FROM THE SEBASTIAN COUNTY CIRCUIT COURT, FORT SMITH DISTRICT [NO. DR-2012-610] |
| V. | HONORABLE JAMES O. COX, JUDGE |
| ANN KAY PASSMORE<br>APPELLEE | AFFIRMED IN PART AND REVERSED AND REMANDED IN PART ON DIRECT APPEAL; CROSS-APPEAL MOOT; MOTION TO STRIKE GRANTED |

**LARRY D. VAUGHT, Judge**

In this division-of-property dispute, appellant A. Powell Sanders argues that the Sebastian County Circuit Court clearly erred in awarding appellee Ann Kay Passmore full interest in an account she held jointly with her mother; in finding that Passmore loaned him $40,991.50 and ordering him to repay the loan; and in inequitably dividing the parties' personal property. On cross-appeal, Passmore contends that, if we reverse the trial court's distribution of the account she owned with her mother, then the trial court clearly erred in equally distributing the parties' six retirement accounts. On direct appeal, we affirm in part and reverse and remand in part. We hold that the cross-appeal is moot.

The parties were married on June 7, 2003, and they had a son on May 26, 2006. The parties separated on April 3, 2012. On July 2, 2012, Sanders filed a complaint for divorce, and on July 16, 2012, Passmore filed an answer and a counterclaim for divorce.

At a May 8, 2013 hearing, Sanders dismissed his complaint with prejudice, and the case proceeded on Passmore's counterclaim. Passmore, a plastic surgeon, testified that she and Sanders married when they were in their thirties. She said they each had their own accounts when they married and that they kept their accounts separate during the marriage. She stated that before their marriage, she and her mother were joint owners of a checking account and a savings account.[1] Passmore stated that during her marriage her income was deposited directly into the savings account and then transferred to the checking account from which she paid the family's expenses. Passmore requested that she be awarded all of these two accounts.

Passmore further testified that prior to the marriage she and her mother were joint owners of a BKD Wealth Management Services account (BKD account). According to Passmore, she was an only child, her father was deceased, and her mother used her retirement to support Passmore through college, medical school, and a five-year residency. She testified that the BKD account was repayment to her mother for supporting her (Passmore's) medical education and that she wanted her elderly mother to have financial resources should her health deteriorate or if anything happened to Passmore. Passmore told the trial court that during the marriage she sporadically contributed to the account and that neither Sanders nor Passmore's mother contributed funds to the account. The value of the BKD account was $468,561. Passmore requested that she be awarded all of this account.

Passmore stated that before and during the marriage she contributed to her 401(k) plan valued at $509,346.53 and her two IRA accounts valued at $98,144.26. Additionally, she said

---

[1] The checking account had a balance of $9,546.07, and the savings account had a balance of $141,647.23.

that during the marriage she funded two IRA accounts for Sanders valued at $53,568.22. Passmore said that Sanders did not contribute any funds to these accounts. Passmore requested that she be awarded full interest in her 401(k) and her two IRA accounts.

Passmore also explained that she and Sanders owned a hobby farm that was not profitable. She asked that she be awarded the farm, horses, equipment, and any tax liability related to the business. She further sought repayment of loans that she claimed she had made to Sanders for his law firm totaling $43,991.50. Finally, Passmore described various items of personal property owned by the parties and offered testimony concerning their value.[2]

Sanders, a lawyer, testified that he contributed to the parties' lifestyle much more than Passmore described. He stated that he and/or his law firm contributed financially to the marriage by purchasing vehicles and paying for insurance and taxes on some of their vehicles. He said that he paid for dinners out; phone, internet, and cable bills; groceries; a TV and sound system; a wine cellar; farm improvements; and family vacations. He also bought lavish gifts for Passmore during their marriage, including five fur coats, jewelry, shoes, and a watch. Sanders said that he demonstrated significant support and advancement of Passmore's career and that he played an integral part in running the farm by setting up the corporation, traveling to purchase horses and equipment, and paying the farm manager's salary. Finally, Sanders stated that during the marriage he purchased a separate home for $47,000 and spent money on his girlfriend by taking her on vacations, paying her utilities, and giving her cash and gifts.

---

[2] Passmore also introduced expert testimony from a certified public accountant who offered testimony about the nonmarital value of the 401(k), the two IRA accounts, and the BKD account Passmore owned prior to her marriage.

He also told the court that he spent tens of thousands of dollars in marital funds for a health coach in Dallas and a life coach in Florida.

Sanders further stated that while married he contributed to his own IRA account valued at $7,889.11. He requested one-half of the marital portions of Passmore's 401(k), her two IRA accounts, and the BKD account. He denied that Passmore's payments to his law firm were loans. And he also disputed the value of several of the items of personal property, claiming that there was debt associated with several of the items. He requested that the parties' personal property be sold and the proceeds divided equally.

A divorce decree was entered by the trial court on May 28, 2013, granting Passmore a divorce based on general indignities, awarding her custody of the parties' child subject to Sanders's visitation rights, and ordering Sanders to pay child support. While the decree resolved several property issues between the parties, the trial court reserved ruling on issues concerning the retirement and bank accounts, personal property, the farm business, and notes receivable, affording the parties the opportunity to resolve the issues on their own.

The parties were unable to agree, and on July 9, 2013, the trial court entered an order distributing and disposing of the remaining marital assets. Relevant to this appeal, the trial court found that Sanders's IRA account and the two IRA accounts that Passmore had funded on his behalf were marital property to be divided equally between the parties. The trial court also found that Passmore's 401(k) and two IRA accounts were partially nonmarital and marital property and awarded Sanders half of the marital portion of these accounts. The trial court next awarded Sanders $47,531 as his marital portion of the BKD account. However, in the same order, the trial court found that the BKD account and the checking and savings accounts

that Passmore jointly held with her mother were to be awarded to Passmore in full. As for the farm, the trial court awarded it and its associated debt to Passmore. Sanders was awarded sole ownership of the 2008 BMW, 2008 Harley Davidson, 2013 Yamaha four-wheeler, 1982 Datsun, and 2002 Honda VTX. Passmore was awarded the 2008 Dodge truck and the Kubota tractor. The trial court ordered that the remaining personal property (a 1992 MasterCraft boat, an Airstream trailer, a Great Dane trailer, and a Peterbilt tractor) be distributed via a private auction between the parties using a sealed bidding procedure. Finally, the trial court found that $40,991.50 in payments from Passmore to Sanders were loans and ordered him to repay them. On July 18, 2013, the trial court, sua sponte, entered an amended order identical to the original order except it deleted the finding that Sanders was entitled to $47,531 of the BKD account.

Sanders filed a motion for new trial, which the trial court denied on August 20, 2013. Sanders appealed. Our court dismissed the appeal, holding that because there was no final order, we lacked jurisdiction. *Sanders v. Passmore*, 2014 Ark. App. 237. On remand, the parties each filed motions to enforce the divorce decree. After a hearing, the trial court entered a letter opinion finding that there was no compelling reason to change the distribution it had made in the amended order. An order was entered on December 17, 2015. Sanders's appeal and Passmore's cross-appeal followed.

## I. *Motion to Strike*

Passmore contends that Sanders's reply brief contains arguments that were not included in his original brief; therefore, they must be struck. Specifically, she contends that Sanders argued in his original brief that the trial court must reverse its unequal distribution of

the BKD account and that in his reply brief he expanded his argument to include the checking and savings accounts. We agree.

An argument made for the first time on reply comes too late. *Orintas v. Point Lookout Prop. Owners Assn. Bd. of Dirs.*, 2015 Ark. App. 648, at 2–3, 476 S.W.3d 174, 176. Unless the appellant opens the briefing with all its arguments for reversal, the appellee has no opportunity to respond to those arguments in writing. *Id.* at 3, 476 S.W.3d at 176. It is well established that we will not consider an argument made for the first time in a reply brief. *Id.*, 476 S.W.3d at 176. Because Sanders raised new arguments in his reply brief, we grant Passmore's motion to strike those arguments.

## II.     *Direct Appeal*

Sanders first argues that the trial court clearly erred in awarding Passmore full interest in the BKD account. While acknowledging that Passmore opened the account prior to their marriage, he argues that it is undisputed that she used marital funds to contribute to the BKD account.

Arkansas Code Annotated section 9-12-315 (Repl. 2015) governs the division of marital property. Section 9-12-315(a)(1)(A) provides that marital property is to be divided equally unless it would be inequitable to do so. If the property is divided unequally, then the court must give reasons for its division in the order. Ark. Code Ann. § 9-12-315(a)(1)(B). The code also provides a list of factors the court may consider when choosing unequal division. Ark. Code Ann. § 9-12-315(a)(1)(A)(i)–(ix).

Section 9-12-315 does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Copeland v. Copeland*,

6

84 Ark. App. 303, 307, 139 S.W.3d 145, 149 (2003). The trial court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is how the total assets are divided. *Id.*, 139 S.W.3d at 149. The trial court is given broad powers, under the statute, to distribute all property in divorce cases, marital and nonmarital, in order to achieve an equitable distribution. *Id.*, 139 S.W.3d at 149.

This court reviews division-of-marital-property cases de novo. *Id.*, 139 S.W.3d at 148. With respect to the division of property in a divorce case, we review the trial court's findings of fact and affirm them unless they are clearly erroneous or against the preponderance of the evidence. *Skokos v. Skokos*, 344 Ark. 420, 425, 40 S.W.3d 768, 771–72 (2001). A finding is clearly erroneous when the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed. *Id.* at 425, 40 S.W.3d at 772. In order to demonstrate that the trial court's ruling was erroneous, an appellant must show that the trial court abused its discretion by making a decision that was arbitrary or groundless. *Id.* at 425, 40 S.W.3d at 772. We give due deference to the trial court's superior position to determine the credibility of witnesses and the weight to be given their testimony. *Id.*, 40 S.W.3d at 772.

Citing *Baxley v. Baxley*, 92 Ark. App. 247, 250, 212 S.W.3d 8, 10 (2005), Sanders contends that the trial court's unequal division of the BKD account is not justified based solely on the circumstance that the marital funds had been earned by Passmore and placed in a separately titled account. He also claims that the trial court merely recited the statutory factors in a conclusory fashion and failed to explain why Passmore should get all of the account.

In *Baxley*, we reversed and remanded the trial court's division of property where it was obvious from the trial court's comments that it had awarded the appellee 100% of her

retirement accounts—that she owned prior to marriage and into which she contributed marital funds—simply because she was the person who had earned the money placed into the accounts. *Id.*, 212 S.W.3d at 13. However, unlike *Baxley*, the trial court in the case at bar did not base its unequal division of the BKD account in question solely on the fact that Passmore was the sole contributor. Instead, the trial court considered many of the statutory factors and explained why they supported its decision to award Passmore full interest in the account.

The trial court found that the parties had not married until their late thirties, the marriage lasted only ten years, and during the marriage the parties kept their personal bank accounts and investments totally separate—they were not co-owners, or even authorized signatories, on each other's accounts. Further, the trial court found that Passmore is a physician, Sanders an attorney, and both parties were well established in their professions with tremendous earning potential; that each party was a high-income earner; that neither party asked for alimony and neither party needed financial assistance from the other; and that neither party had any health issues that would impose any financial pressure. The trial court noted that the BKD account was owned by Passmore and her mother prior to the marriage and that the purpose of the account was to provide healthcare and living expenses to Passmore's mother, who spent her personal retirement funds on Passmore's medical education. The court found that Passmore is an only child, that her father is deceased, and that Passmore's mother is single. Finally, the trial court found that Sanders did not contribute any funds toward the acquisition, preservation, or appreciation of the account.

Sanders maintains that the primary reason that the trial court awarded Passmore all of the BKD account was for the care of Passmore's mother. He argues that because she passed

away several months after the amended order had been entered that reason is no longer valid and the finding must be reversed. We disagree. As set forth above, the trial court considered multiple factors to support its unequal distribution of the BKD account. On this record, it is clear that the trial court considered the BKD account unlike other assets involved in this case.[3] Therefore, we hold that the trial court did not clearly err in awarding Passmore all of the BKD account. Accordingly, we affirm Sanders's first point on appeal.

Sanders's second point on appeal challenges the trial court's finding that Passmore loaned him money for his law firm. At trial, Passmore testified that she had made three loans, totaling $43,991.50, to Sanders for the benefit of his law firm because he could not make payroll. She claims that one loan was made on November 17, 2009, for $28,991.50; a second was made on June 9, 2011, for $12,000; and a third was made on March 14, 2012, for $3000. Sanders did not deny receiving the $28,991.50 and $12,000 payments from Passmore for his law firm; however, he contended that there was never any agreement between the parties that they were loans that he would repay. He testified that the $3000 payment was Passmore's contribution toward a family vacation. The trial court found that Passmore's payments of $28,991.50 and $12,000—for a total of $40,991.50—were loans to Sanders for the benefit of his law firm and ordered him to repay her. In reaching this conclusion, the trial court found that Sanders "did not present any competing evidence in connection with the loans."

---

[3] The trial court's differential treatment of the BKD account and the parties' six retirement accounts illustrates this point. The combined value of the retirement accounts is $480,718.32. The trial court equally divided the marital portions of the retirement accounts despite the fact that Passmore contributed nearly all of the funds ($472,829.21) to those accounts.

Pursuant to *Fine v. Fine*, 209 Ark. 754, 192 S.W.2d 212 (1946), there is a rebuttable presumption that Passmore's payments to Sanders were intended to be gifts. To overcome the presumption, she must establish by clear and convincing evidence that the payments were not gifts. As in *Fine*, the evidence here is conflicting. Passmore argues that the conflicting evidence created a "he said/she said" credibility determination that the trial court made in her favor. However, our supreme court in *Fine* held that this type of equally conflicting evidence "falls short of that full, 'clear and convincing' effect which the law requires in order to establish the alleged [loan] agreement and trust relationship sought to be established." *Fine*, 209 Ark. at 759, 192 S.W.2d at 214.

The only evidence to support Passmore's loan-agreement claim was her testimony that she went to the bank with Sanders and was told how much money his firm needed, and she and Sanders agreed that she would loan him the money.[4] Passmore conceded that there was no document to establish their loan agreements, that she did not write "loan" on any of her checks to Sanders when it was her practice to write on a check what it was for, that they did not discuss the payment of interest, and that she did not care to be paid back while they were married. There was no evidence that she demanded repayment during their marriage, just that "he ought to pay it back" because they were divorcing. This concession alone demonstrates that at the time she paid Sanders the money, she did not intend to be repaid. Further, Passmore did not present testimony from a bank representative to corroborate her loan-agreement claim, and she did not present evidence that she had requested security for the loans.

---

[4] Passmore also introduced several bank documents; however, these documents merely establish that she made payments to Sanders, which he does not dispute.

For these reasons, we conclude that Passmore failed to prove by clear and convincing evidence that she rebutted the presumption that her payments to Sanders were gifts. Accordingly, we hold that the trial court clearly erred in finding that Passmore loaned Sanders $40,991.50, and we reverse the portion of the amended order directing Sanders to repay her that amount.

Sanders's final point on appeal is that the trial court clearly erred in ordering an unfair division of eleven items of their personal property. The trial court awarded Sanders five of those eleven items (the 2008 BMW, 2008 Harley Davidson, 2013 Yamaha four wheeler, 1982 Datsun, and 2002 Honda VTX), which the trial court found had a collective value of $61,475. The trial court awarded Passmore two of the eleven items (the 2008 Dodge truck and Kubota tractor), which the trial court valued at $48,400. The remaining four items were distributed to the parties via the private auction.

Sanders first claims that the trial court's division of these eleven items was clearly erroneous because it significantly overstated the value of the 2002 Honda that he received; awarded him the 2008 BMW and the 2012 Yamaha, which were encumbered with significant debt; and awarded two items to Passmore that were free of debt. He claims that if the property and debt were properly valued, he was awarded personal property with a value of $11,000, which is less than one-quarter of the value of the personal property awarded to Passmore.

We have long recognized that trial courts, in traditional equity cases, have broad powers to distribute the property in order to achieve an equitable division. *Jones v. Jones*, 2014 Ark. 96, at 6, 432 S.W.3d 36, 40. The trial court is vested with a measure of flexibility in apportioning the total assets held in the marital estate upon divorce, and the critical inquiry is how the total

11

assets are divided. *Id.*, 432 S.W.3d at 40. The overriding purpose of the property-division statute is to enable the court to make a division that is fair and equitable under the circumstances. *Id.*, 432 S.W.3d at 40. This court has observed that marital property cannot always be divided exactly equally and in kind. *Id.* at 6–7, 432 S.W.3d at 40. The property-division statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Id.* at 7, 432 S.W.3d at 40–41. We will not substitute our judgment on appeal as to the exact interest each party should have but will decide only whether the order is clearly wrong. *Id.*, 432 S.W.3d at 41.

Here, there was conflicting evidence regarding the personal property. Passmore testified about the value of the items and supported her testimony with estimates from the NADA Guides and other estimates found on the internet. Sanders's valuation and indebtedness evidence was based solely on his testimony. Ultimately, the trial court awarded Sanders a greater portion of this property—he received items valued at $61,475 and Passmore received items valued at $48,400. In doing so, the trial court gave Passmore only two of the seven items—the two she needed for the farm, a business in which Sanders testified he had no interest. Sanders received the remaining five items.

Sanders complains of the debt associated with the 2008 BMW (his vehicle) and the Yamaha four-wheeler, yet he failed to present any documentation to support his indebtedness claims. Second, because the trial court awarded Sanders the greater share of these assets, it is possible that the court did take the indebtedness into consideration. Finally, while the allocation of marital debt is an essential item to be resolved in a divorce dispute and must be considered in the context of the distribution of all of the parties' property, Arkansas Code

Annotated § 9-12-315 and its presumption of equal division do not apply to the division of marital debts. *Adams v. Adams*, 2014 Ark. App. 67, at 16, 432 S.W.3d 49, 60. There is no requirement that the marital debt be subtracted from the marital assets to determine the "net" value of the total award made to each party in all divorce cases. *Id.*, 432 S.W.3d at 60. A determination as to how debts should be allocated between the parties will not be reversed unless it is clearly erroneous. *Id.*, 432 S.W.3d at 60. We hold that Sanders failed to demonstrate that the trial court's decision is clearly erroneous.

Sanders also argues that the trial court clearly erred in requiring the parties to participate in a sealed-bid private auction to dispose of the boat, the Airstream trailer, the Great Dane trailer, and the Peterbilt tractor. The parties exchanged sealed bids for these four items. Sanders was the high bidder for the boat, and Passmore was the high bidder for the remaining three items. Based on the amounts bid, Passmore was ordered to pay Sanders $20,949.

Sanders now contends that the most equitable way to distribute these items would have been to sell them at a public auction and equally divide the proceeds. However, Sanders failed to preserve this argument for appeal. At no time below did Sanders object to the private auction. Instead, he willingly participated in the process, which took place in July 2013, the day after the amended order had been entered. Once the results of the private auction were released, Sanders did not object despite the opportunity to do so. In August 2013, Sanders moved for a new trial. In October 2015, he filed a cross-motion to correct the amended order. He did not raise any objections to the private auction in either motion. A hearing was held on November 30, 2015, on Sanders's cross-motion, and Sanders's counsel made no objection to the private auction. In fact, at the hearing, the trial court stated that the amounts for the items

involved in the private auction had been introduced without objection. Sanders's first objection to the private auction comes in this appeal—nearly three years later.

Any error argued on appeal must have first been directed to the trial court's attention in some appropriate manner, so that court had an opportunity to address the issue. *Stacks v. Jones*, 323 Ark. 643, 647, 916 S.W.2d 120, 122 (1996). Our court continues to adhere to the well-settled rule that issues not raised in the trial court will not be considered for the first time on appeal. *Id.* at 647, 916 S.W.2d at 122. We therefore hold that Sanders failed to preserve this argument, and we affirm the trial court's division of the parties' personal property.

### III.    *Cross-appeal*

Passmore contends that if we reverse the trial court's distribution of the BKD account, then we should reverse the trial court's equal distribution of the parties' six retirement accounts. The cross-appeal is moot based on our holding set forth above.

Affirmed in part and reversed and remanded in part on direct appeal; cross-appeal moot; motion to strike granted.

HARRISON and GLOVER, JJ., agree.

*Smith, Cohen & Horan, PLC*, by: *Matthew T. Horan*, for appellant.

*Jones, Jackson & Moll, PLC*, by: *Kathryn A. Stocks* and *Mark A. Moll*, for appellee.