Mary Helen THOMAS *v.* Billy Dale THOMAS

CA 99-76                                          4 S.W.3d 517

Court of Appeals of Arkansas
Division III
Opinion delivered December 1, 1999

*Jane Watson Sexton,* for appellant.

*Everett Law Firm,* by *David D. Stills* and *John C. Everett,* for appellee.

MARGARET MEADS, Judge. This is an appeal from certain provisions of a decree of divorce relating to the division of property. Appellant, Mary Helen Thomas, appeals from the provisions of the decree that held that certain stock certificates and three certificates of deposit held in the parties' joint names were appellee's separate property; that awarded appellee $50,000 in his investment account as his separate property; and that awarded appellee one-half of the enhanced value of appellant's retirement account and monthly pension benefit. Appellee cross-appeals from the provisions of the decree treating his cattle and farm as marital property, and not recognizing his interest in appellant's separately owned house. We reverse on direct appeal and affirm in part and reverse in part on cross-appeal.

When the parties married in 1985, appellant had been employed at Levi-Strauss since 1959 and had a pension profit-sharing and a 401(k) account valued at $75,000. Appellant also owned a home subject to a mortgage. Appellee lived on a ninety-six-acre farm. He was in the farming business, had a partnership in a litter business, and ran cattle on the farm he owned as well as on seven other leased farms. The parties signed a prenuptial agreement under which appellant advanced $60,000 to appellee for his farming business. Under the terms of the agreement, appellant was to receive $60,000 from appellee's separate assets in the event of divorce or appellee's death in order to restore appellant to the position she was in prior to the advance. The mortgage on appellant's house was paid off in 1991 with a lump sum of approximately $9,000 from the parties' "tractor" account. Appellant retired in 1992, after thirty-three years with Levi-Strauss, and receives a net monthly pension of $1,338.36. Her retirement accounts are currently valued at $371,000. Appellee has an investment account in his name. Several certificates of deposit as well as shares of Wal-Mart, Tyson, and CIFRA stock are held in both parties' names. The parties also have several bank accounts in both names at McIlroy Bank and Farmers & Merchants Bank. The parties individually had these accounts prior to their marriage, but put each other's names on the separate accounts subsequent to their marriage.

Appellant testified that when they married, appellee had more farming equipment and more cattle than he currently has, and he was active in the farming business. During the marriage appellee received approximately $123,000 from the sale of a farm that his father gave him and his sisters, and he also received money from his father's estate. He incurred certain insurance losses to the poultry houses and barn on the farm he owned prior to marriage for which he received approximately $165,000. In May 1992, appellee sold some cattle for $135,000. Appellant testified that some of the cattle could have been part of appellee's herd prior to their marriage. Also in 1992, appellee sold some farm equipment that "had been there" as long as they were married.

During the marriage, appellant usually deposited her pay from Levi-Strauss into a joint bank account at McIlroy Bank from which she paid the parties' electric bill, telephone bill and Comtel; bought groceries, clothing, and items from Wal-Mart; and made church donations. Appellant also paid certain of appellee's farm expenses including bills for the veterinarian, diesel, tractor tires, and tractor labor. Some of appellant's payroll and bonus checks were also deposited into the joint account at Farmers & Merchants Bank (referred to as the farm or tractor account), the account from which appellee generally spent money and into which appellee deposited all his farm income as well as the parties' joint tax refunds. Sometimes appellant's paycheck could not cover all the parties' expenses, in which case appellant would take money out of the tractor account. Appellant testified that they lived off her paycheck and had she not paid for the household, appellee would not have had the money in his tractor account to do all the things he did. She also testified that she helped appellee earn a living by cutting, raking, and baling hay, disking the ground, and helping work the cattle.

In regard to appellee's cattle, appellant testified that appellee sold most of his farm equipment and cattle in 1992 when they were planning to retire and travel. She testified that appellee's current herd was acquired since 1992. The parties changed their minds about retiring and returned to Arkansas where appellee got back into the farming and cattle business.

Appellant testified in detail regarding three certificates of deposit held jointly by the parties. The largest, valued at $80,000, was purchased with $50,000 of the insurance proceeds for losses to

appellee's farm. It was not until several weeks prior to the hearing on the divorce that appellee said that the certificate came from insurance money, and he did not believe appellant should have any part of it. The other two certificates were purchased with the proceeds of either cattle sales, insurance, or auctions. Appellant testified that they had the certificates for years; when they were purchased both names were put on them; and appellee said "nothing about them not being both of our interest."

With regard to the parties' stock, appellant testified that appellee probably suggested the stock be put in their joint names because he usually decided where large sums of money went and that he had both their names placed on the stock. The money "probably" came out of the farm account, but she had some good bonuses then, and they had some good tax returns, all of which were deposited in the farm account.

Appellee testified that appellant's testimony regarding his insurance losses, inheritance, and the sources of money available to him was "pretty accurate." Appellee agreed that he had a lot "less" cattle and equipment, and older equipment now than when he married. He testified regarding a financial statement that he completed in April 1985 in order to get a loan, but he said even though it states that it is, to the best of his knowledge, a true, correct and complete statement of his financial condition and he signed it, he didn't list all of his property. He admitted that appellant worked in the farming operation, but said "how much hay can you bale from three o'clock in the evening or four o'clock until quitting time." He also testified that after she retired in 1992, she was at the farm full-time, but didn't help him full-time.

Appellee testified further that they generally cleared between $20,000 and $40,000 per year on his farming operation, and he could not have bought all the certificates of deposit and stock if he had to rely on his farm income alone. He said that he paid off some of his debts and bought some stock with his insurance proceeds; he used approximately $100,000 from the sale of his father's farm to pay off debts and bought "stock and stuff" with the remainder; and that the money to pay off appellant's mortgage came from the sale of cattle.

In an amended decree entered November 16, 1998, the chancellor granted appellee a divorce and divided both marital and nonmarital property. The chancellor found among other things that $9,000 in marital funds were used to pay off the mortgage on appellant's house, but in order to adjust the equities between the parties he awarded the house to appellant. The chancellor found that appellant's interest in her retirement account was $75,000 at the time of the parties' marriage; that its current value is $371,000; that the $296,000 increase is marital property; and that one-half of that amount should be equally divided between the parties. In regard to appellant's monthly retirement income, the trial court found that any beneficial interest accruing subsequent to the marriage is marital property. Appellant was awarded $60,000 pursuant to the parties' prenuptial agreement. The chancellor found that the Wal-Mart, Tyson, and CIFRA stock as well as the three certificates of deposit held in the parties' joint names were acquired with the proceeds of appellee's separate nonmarital property; that there was no intent for him to make a gift to appellant; and thus these assets were appellee's separate nonmarital property free and clear of any claim by appellant. The chancellor also found that the funds in the parties' checking and savings accounts were marital property and should be divided equally between the parties. Finally, the chancellor found that appellee's cattle and farm equipment were marital property to be equally divided and sold, with the balance, if any, to be divided equally between the parties.

Appellant argues on appeal that the chancellor erred in finding that the stock certificates and certificates of deposit held in joint names were not marital property; erred in awarding appellee the $50,000 in his investment account as his separate property; and erred in awarding appellee one-half the enhanced value of her retirement and pension accounts. On cross-appeal, appellee argues the chancellor erred in treating his cattle and farm equipment as marital property; and erred in not awarding him any interest in appellant's house.

Appellee has also filed a motion to dismiss this appeal because appellant has accepted $63,978.08 representing the award by the chancellor pursuant to the parties' prenuptial agreement and $7,549.50 representing appellant's share of the parties' joint bank account as benefits under the decree of divorce. Appellee says once

a party accepts a benefit under a decree, the party is no longer permitted to appeal the terms of that decree.

A party may prosecute an appeal from a judgment partly in his favor and partly against him even after accepting the benefit awarded him by the judgment, provided the record discloses that what he recovers is his in any event. *Bolen v. Cumby*, 53 Ark. 514, 14 S.W. 926 (1890). One who accepts the benefit of so much of a decree as is favorable to him is not estopped thereby to appeal from the remainder of the decree, if the part accepted and that appealed from are independent. *Bass v. John*, 217 Ark. 487, 230 S.W.2d 946 (1950). Appellants' appeal was not inconsistent with their acceptance of the judgment amounts where the judgment awards that were accepted were theirs in any event and their claims on appeal expressly went to additional awards. *Shepherd v. State Auto Property & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993).

Here, appellant's appeal is not inconsistent with either her acceptance of the chancellor's award pursuant to the parties' prenuptial agreement or with her acceptance of her share of the parties' joint bank accounts. These items were hers regardless of the outcome of this appeal. We therefore deny appellee's motion to dismiss this appeal.

Appellant's first two arguments on appeal are that the trial court erred in finding that the stock certificates and three certificates of deposit held in joint names were appellee's separate nonmarital property. She says that it is not controverted that these items were purchased subsequent to the parties' marriage and that all were held in the parties' joint names.

Chancery cases are reviewed *de novo*, and the chancellor's findings will not be disturbed unless they are clearly erroneous or clearly against the preponderance of the evidence. *O'Neal v. O'Neal*, 55 Ark. App. 57, 929 S.W.2d 725 (1996). With respect to the division of property in a divorce case, we review the chancellor's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence. *Box v. Box*, 312 Ark. 550, 851 S.W.2d 437 (1993).

Once property is placed in the names of both husband and wife without specifying the manner in which they take, such property is presumed to be held by them as tenants by the entirety.

*Creson v. Creson,* 53 Ark. App. 41, 917 S.W.2d 553 (1996). In order to rebut this presumption, the party claiming the property as separate property must present clear and convincing evidence that there was no intent to make a gift of the property to the spouse. *Mathis v. Mathis,* 52 Ark. App. 155, 916 S.W.2d 131 (1996). Clear and convincing evidence is evidence by a credible witness whose memory of the facts about which he testifies is distinct, whose narration of the details is exact and in due order, and whose testimony is so direct, weighty, and convincing as to enable the fact-finder to come to a clear conviction, without hesitation, of the truth of the facts related. *McLain v. McLain,* 36 Ark. App. 197, 820 S.W.2d 295 (1991). On review, the issue is whether the chancellor's finding that the appellee overcame the presumption that these items were held by the entirety by clear and convincing evidence is against a preponderance of the evidence. *Id.*

▐ In the present case there was some testimony as to the source of funds used to purchase these items. There was testimony that the stock had been purchased with proceeds of "stuff" that appellee got rid of; some of the proceeds from appellee's insurance; and some of the proceeds of the sale of appellee's father's farm. In regard to the certificates of deposit, there was testimony that one was purchased with some of the proceeds of appellee's insurance and the others with proceeds of either cattle sales, insurance, or auctions. The fact that money or other property may be traced into different forms is an important matter, but tracing is merely a tool and not an end in itself; therefore, it does not end the inquiry. *McClain, supra.* In the instant case, it is not disputed that these items were purchased during the marriage and held in the parties' joint names, and thus the question is whether appellee presented sufficient evidence to overcome the presumption that the parties owned the property as tenants by the entirety. *Id.* We find that he did not.

▐ We first note that the chancellor stated that the testimony had been *pretty convincing* that the shares of stock were purchased after the sale of items that appellee owned prior to the parties' marriage. This does not meet the *clear and convincing* evidence standard. Moreover, in regard to both the stock and the certificates of deposit, the chancellor stated that in order to find that appellant had an interest in them, he had to find appellee made a gift to her, and because appellant testified that appellee never said anything about it,

the chancellor would have trouble or be strained to find a gift. But, as we have already said, once property is placed in the names of both husband and wife without specifying the manner in which they take, the property is *presumed* to be held as tenants by the entirety. *Creson, supra.* Finally, appellee presented no testimony whatsoever that he had no intent to make a gift to appellant. Therefore, the presumption was not rebutted, and the chancellor erred in finding that the shares of stock and three certificates of deposit were appellee's separate nonmarital property. We reverse and remand on this issue for the chancellor to modify his order and to divide these items as marital property pursuant to Ark. Code Ann. § 9-12-315 (Repl. 1998).

Appellant next argues that the chancellor erred in awarding appellee $50,000 in an investment account in appellee's name with Arvest Bank Co. which represented the proceeds from a 1992 sale of cattle. She contends that where there was no proof that the cattle were the same as appellee owned in 1985 and where she actively assisted appellee in the cattle farming operation, the court erred in not awarding her a one-half interest in the remaining proceeds from the sale.

Maury Hill testified that appellee had approximately 350 head of cattle when the parties married; that appellee sold just about all his cattle in 1992, some seven years after the parties' marriage; and that he saw appellant on the farm working as hard as any man. Appellant testified that in May 1992 appellee sold a "bunch" of cattle to Randy Laney for $135,000; that some of the individual cattle might have lived from 1985 to 1992 and been part of the original herd; that the herd itself was intact; that the sale was from that herd; and that the $50,000 represented the last payment from Laney. Appellant also testified that she worked on the farm and helped appellee with his cattle, and that her income from Levi-Strauss was used for certain farm expenses including veterinarian bills for the cattle. Moreover, appellee testified that appellant worked hard and would come out to the farm and help him bale hay after she got off work. From the evidence above, it is obvious that the parties' joint efforts went into the maintenance of the herd of cattle. Therefore, we find that the chancellor's award of the $50,000 in appellee's investment account was clearly erroneous, and we reverse and remand on this issue for the chancellor to make a

division that recognizes appellant's contribution to the maintenance of the herd.

Finally, appellant argues that the trial court erred in awarding appellee one-half of the enhanced value of her retirement accounts and monthly pension benefit. The parties were married in December 1985 and were divorced by decree entered November 16, 1998. At the time of the parties' marriage, appellant was working at Levi-Strauss earning approximately $45,000 per year and had profit-sharing and 401(k) accounts worth about $75,000. Appellant retired in 1992 after thirty-three years' service. Since that time she has received $1,338.36 per month from her pension plan and draws nothing from the 401(k) unless she requests it. The chancellor found that appellant's interest in the retirement accounts as of the date of the parties' marriage was $75,000; that on the date of the hearing the accounts' value was $371,000; and that the $296,000 increase in value of the accounts is marital property to be divided equally between the parties, with each party accruing to the beneficial ownership of one-half of the amount. In regard to appellant's monthly pension, the chancellor found that appellant has a vested interest in a separate individual retirement account through Levi-Strauss & Co. upon which she now draws approximately $1,300 per month and that any beneficial interest accruing in the account subsequent to the marriage is marital property.

Appellant argues that during the course of the parties' marriage the funds in the retirement account ballooned from $75,000 to $371,000 through no effort or action of the parties and for "whatever unexplained economic reason." Appellant says it is inequitable, given her thirty-three years' labor during which the parties were married only seven years, to award appellee a $148,000 windfall. Appellant argues that the trial court should have awarded appellee a fractional interest in her benefits reflecting the number of years the parties were married and the number of years appellant actually worked at Levi-Strauss, according to the formula approved in *Marshall v. Marshall*, 285 Ark. 426, 688 S.W.2d 279 (1985), and *Askins v. Askins*, 288 Ark. 333, 704 S.W.2d 632 (1986).

We first address the matter of appellant's monthly pension of $1,338.36. Appellant testified that this pension check is the result of a pension plan she earned during her period of employment at Levi-Strauss, only a part of which time she was

married to appellee. Pension benefits based on contribution or services outside the period of the marriage constitute nonmarital property, and an award of retirement benefits should reflect the correct proportionate share of each party. *Marshall, supra*. Military pensions have been divided proportionately to the number of years of marriage coinciding with the pensioner's military service. *See Young v. Young*, 288 Ark. 33, 701 S.W.2d 369 (1986) (approving an award to the spouse of the military retiree of one-half of 17/20 of the retirement pay where the parties had been married for seventeen of twenty years of military service); *Askins, supra* (approving an award to the spouse of one-half of twelve divided by the number of years appellant will have served upon retirement where the parties had been married for twelve years of the appellant's military service). Although appellant's pension is not a military pension, it is analogous, and we see no reason why it should be treated differently; therefore we reverse the chancellor's finding in regard to appellant's monthly pension benefit and remand for the chancellor to award appellee a proportionate share of appellant's monthly benefit. Appellee is entitled to one-half of a fractional interest in each pension check. The fraction will have a numerator of seven, the number of years the parties were married during appellant's employment at Levi-Strauss; the denominator will be thirty-three, the total number of years of appellant's employment.

In regard to appellant's 401(k) plan, Ark. Code Ann. § 9-12-315(b)(1) (Repl. 1998) provides that marital property means all property acquired subsequent to the marriage. Pension benefits based on contributions not made during the marriage constitute nonmarital property. *Marshall, supra*. Therefore, the chancellor correctly found that appellant's $75,000 interest in these retirement accounts as of the date of the parties' marriage was appellant's separate property and not subject to distribution to appellee. However, the chancellor also found that the $296,000 increase in the value of appellant's retirement accounts subsequent to the parties' marriage was marital property. The increase in value of property acquired prior to marriage is excepted from the definition of marital property. Ark. Code Ann. § 9-12-315(b)(5); *Smith v. Smith*, 32 Ark. App. 175, 798 S.W.2d 442 (1990). Here, at least part of the $296,000 increase in appellant's retirement account resulted from the increase in the value of appellant's nonmarital property. Therefore, the chancellor erred in holding the entire increase in value of

appellant's retirement accounts to be marital property. *Yockey v. Yockey*, 25 Ark. App. 321, 758 S.W.2d 421(1988). The increase in value of the $75,000 in appellant's retirement accounts at the time of the parties' marriage is nonmarital property, and we reverse and remand on this issue for the chancellor to determine the amount of the increase attributable to appellant's $75,000 nonmarital interest in the accounts which increase constitutes appellant's nonmarital property.

On cross-appeal, appellee first argues that the trial court erred in treating his cattle and farm equipment as marital property. With regard to the farm equipment, appellee says the farm equipment was either owned prior to the marriage or was acquired in exchange for farm equipment owned prior to the marriage, and therefore should have been awarded to him as his premarital property. We agree that the farm equipment is nonmarital property.

At trial, the parties submitted a list of assets as Stipulated Exhibit No. 2. Although appellant testified that she did not agree that some of the items on that exhibit represented farm equipment that appellee owned prior to their marriage and that he did not have all of the items, she also testified that he had dozers, back hoes, seed drills, rakes, fluffers, hay balers, tractors, wagons, silage cutters, and "all that stuff" a long time before she knew him. The chancellor erred in finding that the farm equipment is marital property, and we reverse on this point.

In regard to the cattle, however, Maury Hill testified that appellee had approximately 350 head of cattle when the parties married, and that in 1992 he sold "just about all his cattle." Appellee heard Hill's testimony regarding the cattle and agreed that the testimony was "pretty well the way I see the matter." Moreover, appellant testified that appellee sold his cattle in 1992 when the parties were planning to retire and travel. Later they changed their minds, returned to Arkansas, and appellee started buying cattle again and got back into the farming business. Therefore, we do not agree that the chancellor erred in finding the cattle to be marital property.

Appellee's second argument on cross-appeal is that the trial court erred in not recognizing appellee's interest in appellant's house by virtue of his $9,000 payment on the mortgage. In its order

the trial court found that $9,000 of marital funds were utilized to make a payment on the outstanding mortgage. However, in order to adjust the equities between the parties, the chancellor awarded the house to appellant free of any claim on appellee's part. It appears that the basis for the chancellor's decision was to adjust the equities between the parties. In light of our previous findings on direct appeal we reverse on this point and remand to the chancellor to reconsider the equities in light of our reversal.

Reversed and remanded on direct appeal; affirmed in part, reversed and remanded in part on cross-appeal.

PITTMAN and NEAL, JJ., agree.