Peggy L. COOMBE *v.* Joe Marvin COOMBE

CA 04-458                                                     201 S.W.3d 15

Court of Appeals of Arkansas
Opinion delivered January 5, 2005

*Jerry D. Patterson*, for appellant.

*Ralph Blagg*, for appellee.

JOHN B. ROBBINS, Judge. In this one-brief appeal, appellant Peggy L. Coombe appeals the divorce decree entered by the

Searcy County Circuit Court granting her counterclaim for divorce from appellee Joe Marvin Coombe and dividing their assets. The parties were married on February 10, 2003, and lived separate and apart from and after March 30, 2003. The hearing on their divorce action was conducted on September 17, 2003. The decree was filed of record on October 8, 2003, and appellant filed a timely notice of appeal from the decree. Appellant contends that the trial judge erred in failing to find that appellee's income during the marriage, cattle purchased during the marriage, and a truck purchased during the marriage were all divisible marital assets. We hold that the cattle that appellee purchased were marital property subject to division. However, the equities are not abundantly clear as to the manner in which to fairly divide the assets in this particular case, and therefore, we reverse and remand for further proceedings.

This court reviews division of marital property cases de novo. *Copeland v. Copeland*, 84 Ark. App. 303, 139 S.W.3d 145 (2003). In reviewing a trial court's decision on whether an item is marital property, we will not reverse unless the court's ruling is clearly erroneous. *See Dennis v. Dennis*, 70 Ark. App. 13, 13 S.W.3d 909 (2000); *Smith v. Smith*, 32 Ark. App. 175, 798 S.W.2d 442 (1990); *Nicholson v. Nicholson*, 11 Ark. App. 299, 669 S.W.2d 514 (1984).

In *Price v. Price*, 341 Ark. 311, 16 S.W.3d 248 (2000), our supreme court declared that a divorce is not final until the divorce decree is entered as provided in Ark. R. Civ. P. 58 and Administrative Order No. 2. Arkansas Code Annotated section 9-12-315(a)(1) (Repl. 2002) provides that all marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable; in that event, the court shall make some other division that the court deems equitable, taking into consideration the following factors: (1) length of the marriage; (2) age, health, and station in life of the parties; (3) occupation of the parties; (4) amount and sources of income; (5) vocational skills; (6) employability; (7) estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; (8) contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and (9) the federal income tax consequences of the court's division of property. The statute further states that, when property is divided pursuant to these considerations, the court must state in the order its reasons for not dividing the marital property equally. Arkansas Code Annotated section 9-12-315 does not compel

mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Creson v. Creson*, 53 Ark. App. 41, 917 S.W.2d 553 (1996). The statute vests the trial judge with a measure of flexibility and broad power in apportioning property, non-marital as well as marital, in order to achieve an equitable distribution; the critical inquiry is how the total assets are divided. *See Page v. Anderson*, 85 Ark. App. 538, 157 S.W.3d 575 (2004). In addition, the specific enumeration of these factors does not preclude a trial court from considering other relevant factors, where exclusion of other factors would lead to absurd results or deny the intent of the legislature to allow the court to make an equitable division of property. *Id.* We will not substitute our judgment on appeal as to the exact interest each party should have but will only decide whether the order is clearly wrong. *Id.*

With these recitations of pertinent Arkansas law, we examine the evidence pursuant to our de novo review. The parties, residents of Marshall, Arkansas, married later in life and enjoyed rural living. Appellee Joe Marvin Coombe received $741 in monthly social security benefits and on occasion earned extra income by logging. Appellee maintained a separate checking account. Appellant Peggy Coombe did not work but collected $683 in monthly disability benefits, which she generally kept in her purse. She did not make any deposits to appellee's checking account. Appellant owned her own home, which she kept, but they lived together in appellee's house before and after they married. They lived together as married persons for only approximately six weeks, separating after a serious disagreement and altercation on March 30, 2003, resulted in law enforcement officers being called. Each party sought a divorce from the other.

In explaining what he and she owned, appellee testified that prior to their marriage he bought two horses and a bull, and he also owned a sizable amount of logging equipment and a horse trailer. Appellee noted the dates on canceled checks from his account showing that he bought the trailer and horse one day prior to the day they married. He bought four head of cattle during their six-week marital cohabitation and bought an additional fifty-eight head of cattle after their separation. Appellee said he also bought a winch subsequent to the marriage, which appellant took with her along with one horse. Appellee said he bought another winch after she left, so they each had one in their possession. Appellee also believed that appellant stole his saddle, a bridle, a saddle blanket, a

saddle pad, and two stock whips when she left. Appellee explained his monthly income of social security, and said that he garnered occasional income from cutting logs and selling them to International Paper.

Appellee's counsel objected to questions about his income after the parties separated. The trial judge sustained the objection, noting that it was irrelevant because appellant was not asking for support. Appellant's counsel argued that appellee's retained income in his checking account was a divisible marital asset. Appellant's counsel further argued that he had sent a subpoena duces tecum to appellee so that he would bring his checking account information from February 10 (date of marriage) through September 17 (date of the hearing) to show his income, but appellee had only provided information covering the period from the date of marriage until they separated six weeks later. Appellee's counsel responded that the subpoena was sent to him the day before the hearing, and it was for the same information that he had objected to as irrelevant early on in the discovery process. The trial judge declined to hold appellee in contempt for failure to bring all the information demanded in the late-delivered subpoena, stating that appellant could have moved to compel discovery but did not.

Appellant took the stand and disagreed that appellee bought the horse trailer or one of the horses, instead claiming that she was the one who purchased both in cash after they married. She had no documents that supported her claim, agreeing that title to the $650 trailer was in appellee's name and was dated prior to the marriage, but stating that she let appellee have the title for tax purposes and knew that he filled out the title himself. Appellant also said she bought the $705 winch during their marriage, which she took with her. Appellant said her horse cost $500, which she also took with her. Appellant explained that she had enough money for these purchases because she was a college student at the time and had just received $1650 from a Pell grant and $1750 from a Stafford loan. Appellant added that she kept one saddle blanket, one saddle, and one bridle, which she said were all gifts from appellee. Appellant stated that she wanted her chickens back, but appellee would not return them.

Appellant openly admitted that she rammed appellee's 1984 Ford truck into his house, but she was acting "berserk" because she claimed appellee had beat her, had tried to run over her with a tree cutter, and had damaged her car in the process. She said their confrontation came out of an argument over his poor decision to

buy four old cows. As for his income, she guessed that appellee probably earned between $2000 and $3000 from logging while they were married, but she did not know for sure.

In conclusion, appellant's counsel asked that the trial judge grant her all of the assets that she bought with her money and one half of the marital estate, which must include his income retained between the dates they married and divorced. Appellant requested fees and costs to be assessed against appellee. Appellee's counsel noted the distinct disparity between the testimony of the parties as concerned who bought what and when, and he asserted that appellee's income should remain his.

After taking a brief recess, the trial judge granted appellant the divorce. Thereupon, he found that after assessing the credibility of the parties he would divide the property as follows. Each party would retain one horse, and each party would retain one winch. As to the dispute over the horse saddle, bridle, bit, blanket, whips, and trailer, the judge ordered that they be sold at public auction and the proceeds evenly divided, regardless of who purchased these items. Regarding the property damage that each claimed the other intentionally inflicted, each was deemed responsible to repair their own things. Both sides were ordered to bear their own attorney's fees and costs. Regarding the four cows appellee purchased just prior to their separation, and the fifty-eight head of cattle he purchased after appellant moved out, the judge declared those to be appellee's separate non-marital property. In considering appellee's logging income, the judge found that appellant failed to prove any amount accrued during the marriage such that no division would be made.

Two days after the decree was filed, appellant filed a petition for reconsideration listing several issues: (1) the judge's failure to declare the chickens as appellant's, or to make any finding regarding the chickens; (2) the discovery by appellant that appellee had misrepresented his assets at the divorce hearing by failing to disclose his purchase of a 1999 Dodge pickup truck, which should be declared marital property; (3) the judge's error in declaring the cattle non-marital property; and (4) the judge's error in failing to divide appellee's logging income earned during the marriage. Appellee filed a general response to this petition denying that it had any merit. The judge did not enter any order relating to this petition, concluding that by the time the hearing was conducted appellant had already filed her notice of appeal, which deprived

him of jurisdiction to act on the petition. The notice of appeal brought up for review the October 8, 2003, divorce decree.

■ We first consider the finding that the cattle were non-marital property. Unquestionably, this was an error of law. Arkansas law provides that assets acquired after separation and prior to a grant of divorce are considered marital property. *See Cavin v. Cavin*, 308 Ark. 109, 823 S.W.2d 843 (1992). The determinative factor is the time that the right to the property was acquired. *Wright v. Wright*, 29 Ark. App. 20, 779 S.W.2d 183 (1989). Appellee testified that he purchased sixty-two head of cattle while the parties were married. All property acquired during the marriage is marital property unless it falls under an exception to the statutory definition of marital property, none of which are applicable here. *See* Ark. Code Ann. § 9-12-315(b) (1987); *Day v. Day*, 281 Ark. 261, 663 S.W.2d 719 (1984). Given that the cattle were marital property, the trial judge was mandated to divide their value equally or provide an explanation why such a division would not be equitable under the circumstances.

■ On de novo review of a fully developed trial court record, where we can plainly see where the equities lie, we may enter the order that the trial judge should have entered. *Bradford v. Bradford*, 34 Ark. App. 247, 808 S.W.2d 794 (1991). However, we decline to do so in this case because the cattle at issue are likely the parties' most significant marital asset, and because we believe that the interests of justice will be better served by remanding the case for a complete resolution of the property rights of these parties in a manner consistent with this opinion. *See Dunn v. Dunn*, 35 Ark. App. 89, 811 S.W.2d 336 (1991). In conducting such further proceedings, the trial judge will not be bound by prior determinations regarding the relative share of the marital estate to be awarded to each of the parties, and may permit the introduction of such additional evidence as is necessary for a just resolution of the issues. *Id. See also Bradford v. Bradford, supra.*

Appellant further argues that the trial judge erred by failing to equally divide the value of the truck that she asserts appellee bought prior to the divorce. Appellant alleged that she learned of this purchase after the hearing. We decline to address this issue because the trial court did not act on the motion. Upon remand the trial judge may permit further proof to be adduced and make any findings necessary to resolve the dispute on this point.

    Lastly, appellant argues that the trial judge clearly erred by not dividing all income appellee garnered during the marriage. While we would agree that unexpended income earned during a marriage has the character of marital property, the trial judge found that there was a failure of proof on this issue. We cannot say that this was clearly erroneous, and appellant does not challenge the trial judge's failure to hold appellee in contempt for not bringing all of his checking account documents to trial.

    Reversed and remanded.

    NEAL and VAUGHT, JJ., agree.