Dawn Michelle SINGLETON *v.* Michael Larue SINGLETON

CA 06-1070                                                260 S.W.3d 756

Court of Appeals of Arkansas
Opinion delivered August 29, 2007

*James M. Pratt, Jr.*, for appellant.

*Mary Thomason*, for appellee.

WENDELL L. GRIFFEN, Judge. Appellant Dawn Singleton brings this appeal from an order of the Ouachita County Circuit Court contending that the trial court erred in not awarding her an unequal share of the parties' marital assets. We disagree, and we affirm.

Appellant and appellee Michael Singleton married in January 1990 and separated in 2005. Appellant filed her complaint for divorce and appellee filed a counterclaim for divorce. The parties had three minor children and agreed on the issues concerning custody, visitation, and support of the children. Appellant owned and operated her own hair salon, which, according to appellant, had lost money the last three years of the marriage. Appellee worked for a paper company and had a small retirement account.

The major issue at trial was the distribution of the marital assets because appellant was seeking an unequal division of the marital property in her favor. The testimony revealed the following facts. In October 2003, appellant received a settlement of a personal-injury claim in excess of $304,000. Appellee received a settlement of his derivative claim in the amount of $3100. The parties placed appellant's settlement funds into a joint bank account. Appellee also deposited his paycheck into the same account. By the time of trial, the parties had spent all of the settlement proceeds.

The parties purchased a home for $85,000 and made improvements valued at $30,000. The home was valued at $116,000 at the time of trial. The furniture and furnishings for the home were valued at $4000. The parties also purchased a $30,000 used Yukon Denali for appellant. The vehicle was worth $18,500 at the time of trial. Appellant twice borrowed against her vehicle to pay various bills. Appellee purchased a truck, valued at $14,000, and a ski boat and accessories. The boat was financed, and a balance of $4900 remained. Appellant opined that the boat was worth more than $6500. A travel camper was also purchased for $8500. Appellant testified that it was worth more than the $4500 value given by appellee.

Some of the settlement funds were placed in a joint account at a brokerage house. In March 2005, appellant withdrew the remaining balance of $53,000 from that account because she believed appellee was going to remove the money first. That money was spent purchasing a $14,500 vehicle for the parties' daughter; paying $2100 for insurance, subsequently repaid in part

by appellee; purchasing a new washing machine; purchasing a $3000 four-wheeler; a $2000 riding lawnmower; spending $3000 for a weekend getaway for appellant and her girlfriends; paying some medical bills; and simply giving some of the money to appellant's friends. Appellee did not seek to recover any of these funds.

On February 28, 2006, the trial court issued a letter opinion containing its findings relating to the disposition of the marital property. After stating that it had considered the factors contained in Ark. Code Ann. § 9-12-315 (Repl. 2002), the court awarded appellant her vehicle, the four-wheeler, and the furniture and appliances located in the marital residence, as well as the fixtures from her shop. Appellee was awarded his pick-up truck; the ski boat, motor, and trailer; the riding lawn mower; the travel trailer; and other items of personal property. Appellee's retirement account was divided equally between the parties. Appellant was responsible for certain debts, while appellee was responsible for the payment of the debt on the boat. The parties were to be equally responsible for payment of certain medical bills. Pursuant to appellant's alternative request, the court awarded appellant possession of the marital residence until the parties' youngest child turned eighteen or appellant remarried or cohabited with an adult male, at which time the home would be sold and the proceeds equally divided. The parties were to own the home as tenants in common. After entry of a decree memorializing these findings, this appeal followed.[1]

On appeal, divorce cases are reviewed de novo. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). With respect to the division of property, we review the trial court's findings of fact and affirm them unless they are clearly erroneous, or against the preponderance of the evidence; the division of property itself is also reviewed, and the same standard applies. *Id.*

In her sole point on appeal, appellant argues that the trial court should have awarded her a greater share of the marital assets because all of those assets were purchased with funds from

---

[1] The decree was entered on May 25, 2006, and the notice of appeal was filed on June 26, 2006. The thirtieth day on which to file the notice of appeal fell on Saturday, June 24, 2006. Therefore, the time for filing the notice of appeal was extended to the following business day, Monday, June 26. Ark. R. App. P. – Civil 9; *Watanabe v. Webb*, 320 Ark. 375, 896 S.W.2d 597 (1995).

her injury settlement. Appellant lists the factors contained in section 9-12-315(a)(1)(A) and argues that they weigh in favor of an unequal division in her favor.[2] However, appellant offered no evidence, other than the parties' 2003 and 2004 tax returns and her own statement that she was "uninsurable," having any bearing on these factors. Nevertheless, the trial court indicated that it considered the proper factors. The application of these factors is a factual determination; therefore, this court will not reverse the division of marital property unless that division is clearly against the preponderance of the evidence. *See Russell v. Russell,* 275 Ark. 193, 628 S.W.2d 315 (1982). We will not substitute our judgment on appeal as to the exact interest each party should have but will only decide whether the order is clearly wrong. *Coombe v. Coombe,* 89 Ark. App. 114, 201 S.W.3d 15 (2005).

Appellant's argument focuses on the fact that the funds used to purchase the home, vehicles, and other property came from her personal-injury settlement. The trial court could have decided that, because the settlement money was deposited into joint accounts and was used to purchase, among other things, a house titled in both names, it lost its character as appellant's separate property. *See McKay v. McKay,* 340 Ark. 171, 8 S.W.3d 525 (2000); *Lofton v. Lofton,* 23 Ark. App. 203, 745 S.W.2d 635 (1988). Placing the funds from her settlement into *joint* accounts created a presumption that appellant intended to make a gift to appellee of one-half of the settlement proceeds. Appellant offered no testimony seeking to rebut this presumption, and it was her burden to do so. *See Davis v. Davis,* 79 Ark. App. 178, 84 S.W.3d 447 (2002). Moreover, one spouse's unequal contributions to marital property need not be recognized upon divorce. *McKay, supra.*

Finally, contrary to the dissent's assertion, equity does not compel an unequal division in appellant's favor where she commingled the settlement proceeds, where she voluntarily spent

---

[2] These factors, although not exhaustive, include the length of the marriage; age, health and station in life of the parties; occupation of the parties; amount and sources of income; vocational skills; employability; estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income; contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a homemaker; and the federal income-tax consequences of the court's division of property.

a considerable amount of those proceeds on non-essential items with full knowledge that she was "uninsurable" and that there would be no more money with which to pay her future medical expenses, and with full knowledge that she had suffered losses in her business in each of the last three years prior to the divorce.[3]

We cannot say that the trial court was clearly wrong in its division of the parties' marital estate. Therefore, we affirm.

Affirmed.

PITTMAN, C.J., ROBBINS, GLOVER, and HEFFLEY, JJ., agree.

HART, J., dissents.

JOSEPHINE LINKER HART, Judge, dissenting. I am baffled by the majority's opinion in this case. In rejecting Ms. Singleton's argument, they assert that there is a paucity of evidence regarding the statutory factors that should guide us in making an unequal disposition of marital property. Specifically, they state that she "offered no evidence, other than the parties' 2003 and 2004 tax returns and her own statement that she was 'uninsurable,' " that had "any bearing on these factors." This is simply not true. Given this patently incorrect statement, I must conclude that my esteemed colleagues

---

[3] Our dissenting colleague professes to be "baffled" by our decision to affirm the trial court's decision. Nevertheless, the record and the controlling law are unmistakably clear. Appellant knowingly deposited her personal injury settlement into a marital bank account. She and appellee deducted funds from that account for numerous purchases. In affirming the trial court's rulings concerning the legal effect of appellant's decision and the subsequent transactions on the marital account, we, like the trial judge, are following settled Arkansas law that such voluntary commingling of separate funds into marital accounts creates a rebuttable presumption that appellant, as the owner of separate property, intended to make a gift of that property to the other marital partner. *See McKay, supra; Davis, supra.* We must affirm in the instant case because appellant failed to rebut this presumption.

As for our colleague's preferred disposition of the marital residence, we note that neither counsel for appellant nor our esteemed colleague has cited any authority for the contention that appellant is entitled to a life estate in the marital residence because her voluntary choices about spending the settlement proceeds have resulted in financial distress. Clearly, appellee is entitled to his share of the value of the marital residence now that the parties have divorced. The trial court correctly ruled that appellant is entitled to occupy the residence until the parties' children reach their majority. To grant appellant a life estate in the residence beyond that point would amount to an unauthorized and unwarranted seizure and transfer of appellee's legal interest in the property, and would give appellant relief that she did not request.

have misunderstood the nineteen-page abstract; otherwise they would not make such an obvious mistake of fact. The testimony of Ms. Singleton and her ex-husband, addressed *all* of the statutory factors enumerated in Arkansas Code Annotated section . 9-12-315(a)(1)(A) (Repl. 2002), with the exception of whether there would be detrimental income-tax consequences of a particular property division. While I am mindful that we defer to the trial judge's "superior position to determine the credibility of witnesses and the weight to be given their testimony," *see, e.g., Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999), this case does not hinge on Ms. Singleton's credibility. Indeed, there are virtually no disputed facts relating to the section 9-12-315(a)(1)(A) factors.

It is important to note, if only in dissent, that there is evidence that relates to each of the statutory factors. These are as follows:

■ The length of the marriage. The parties were married for sixteen years, long enough to be considered a marriage of substantial duration. Consequently, the likely standards of living of both parties post-divorce should be equalized if possible.

■ Age, health, and station in life of the parties. Ms. Singleton is still in her thirties, but she has had back surgery and has heart problems that were severe enough to result in her receiving a $300,000 settlement in her personal-injury case. Conversely, there is no evidence, save for Mr. Singleton's use of illegal drugs, to suggest that he has any impairments to his health.

■ Occupation of the parties. Ms. Singleton runs her own barber shop and has waited on tables and worked in a flower shop. With this experience, but for her health problems, she should be able to attain at least a minimal standard of living. However, Ms. Singleton's health issues overshadow this factor. By comparison, Mr. Singleton is an experienced supervisor, who has demonstrated the ability to earn several times what Ms. Singleton has been able to realize from her employment. His earning potential should continue to increase.

■ Amount and sources of income. As the majority notes, Mr. Singleton has demonstrated the ability to earn approximately $40,000 per year over the last three years, while Ms. Singleton's employment has resulted in a loss. As noted previously, the onset of her health problems does not suggest that her earning potential will increase.

■ Vocational skills. Ms. Singleton is a trained barber and Mr. Singleton an experienced supervisor. Even without Ms. Singleton's health problems, this factor should not weigh equally for the parties. I cannot ignore the fact that she did present unrebutted testimony that she doubted that she could work the kind of hours that would allow her to support herself, and Mr. Singleton did not really dispute this assessment.

■ Employability. Ms. Singleton has serious health problems that will certainly make her less attractive to future employers. Mr. Singleton, conversely, demonstrated the ability to secure new employment when his previous employer, International Paper, discontinued its operations.

■ Estate, liabilities, and needs of each party and opportunity of each for further acquisition of capital assets and income. Ms. Singleton has virtually no chance of securing another home. Her personal injury, while eventually debilitating, did give her a chance at securing the comfort of her own home. Mr. Singleton is entering his prime earning years, so presumably his opportunities to accrue more property should only be greater in the years to come.

■ Contribution of each party in acquisition, preservation, or appreciation of marital property, including services as a home-maker. Ms. Singleton, through her unfortunate experience with a diet drug and her consequent personal-injury settlement, was responsible for bringing to the marriage all of the significant marital assets. I believe it is proper to consider that the marital estate in its present form existed for only about one year of the sixteen-year marriage. Moreover, if Ms. Singleton had been more selfish, none of the proceeds of her personal-injury settlement would even have become marital property. Mr. Singleton, on the other hand, helped spend Ms. Singleton's personal-injury settlement by purchasing a thirty-two foot travel trailer, a ski boat, and a new truck, not to mention the use of illicit drugs. I certainly cannot imagine why anyone from the bench, bar, or street would have trouble weighing these factors. I do not understand why the majority chooses to ignore the obvious.

In addition to missing this evidence, the majority fails to grasp the essence of Ms. Singleton's argument. Instead they spend a full paragraph of their rather limited analysis speculating that the trial judge "could have decided that, because the settlement money was deposited into joint accounts and was used to purchase,

among other things, a house titled in both names, it lost its character as appellant's separate property." Ms. Singleton, however, does not make a tracing argument here. Again, it was undisputed that almost every single piece of significant marital property with the exception of a barbecue grill and a lawnmower, came from the proceeds of Ms. Singleton's personal-injury settlement. This undisputed fact directly corresponds to section 9-12-315(a)(1)(A) factors vii and viii, relating to the "opportunity of each for further acquisition of capital assets and income" and "contribution of each party in acquisition . . . of marital property," respectively. I would regard this failure on the part of the majority as a mixed mistake of law and fact, given their earlier erroneous statement that there was no evidence having a "bearing" on these factors.

I recognize that our review in traditional equity cases has become increasingly deferential; however, our review is still de novo. *Skokos v. Skokos*, 344 Ark. 420, 40 S.W.3d 768 (2001). As such, the appellate courts of this state are charged with determining where the equities lie. Applying the undisputed facts to the section 9-12-315(a)(1)(A) factors leads me to the inevitable conclusion that Ms. Singleton should have gotten a larger share of the marital property. I simply cannot subscribe to the majority's bald assertion that "equity does not compel an unequal division in appellant's favor where she commingled the settlement proceeds, where she voluntarily spent a considerable amount of those proceeds on non-essential items with full knowledge that she was 'uninsurable' and there would be no more money with which to pay her future medical expenses, and with full knowledge that she had suffered losses in her business in each of the last three years prior to the divorce." While it is true that Ms. Singleton purchased a four-wheeler for $3,500 and spent $3,000 on a vacation in Hot Springs, the balance of her expenditures, identified by her ex-husband as "non-essential items," included a $14,500 car for the parties' daughter, $2,100 for insurance, payment on medical bills and a new washing machine. With the exception of the washing machine, all of these purchases were undisputedly made while the parties were living together as husband and wife. I cannot understand why the majority would conclude that equity would not compel a more favorable distribution of the marital assets to Ms. Singleton where her ex-husband took from her personal-injury settlement a thirty-two-foot travel trailer; a pick-up truck; a *second* stainless steel barbecue grill; fishing equipment; and a ski boat, trailer and motor; particularly where there was unrebutted testi-

mony that the marriage broke down due in large part to appellee's use of illegal drugs. Today's majority opinion establishes what I have labeled the "doctrine of worthier toys," i.e., that a washing machine for a household that contains three teenagers is "nonessential" and, by implication, it is somehow "essential" for a single man to have a thirty-two-foot travel trailer and ski boat. By the majority's reckoning, equity has a new face.

Lastly, and most importantly, the biggest problem with the majority's opinion is that it is simply too myopic. Because this is an equity case, we are afforded significant latitude in how we dispose of a case on review. It is not the all-or-nothing situation that the majority seems to believe. On de novo review of a fully developed record in an equity case, where we can plainly see where the equities lie, we may enter the order that the trial judge should have entered. *See White v. White*, 50 Ark. App. 240, 905 S.W.2d 485 (1995). I submit that the trial judge was largely correct, opining that Ms. Singleton should remain in the home that was purchased with the proceeds of her personal-injury settlement. I disagree only with the length of time that she should be allowed to stay. While it is certainly in the best interest of the children to allow them to spend the rest of their minority in their new home, this decision ignores the fact that, given her health problems, in seven years Ms. Singleton will be less able to achieve even the modest standard of living she enjoyed in her sixteen-year marriage. I would therefore affirm this case as modified, leaving Ms. Singleton in possession of the house for the rest of her life, not merely until her duties as a mother and primary caretaker of the parties' minor children are considered at an end by this court.