Cite as 2025 Ark. App. 149

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CV-23-752

| | | |
|---|---|---|
| DEBRA HENRY | | Opinion Delivered March 5, 2025 |
| | APPELLANT | |
| | | APPEAL FROM THE FAULKNER |
| V. | | COUNTY CIRCUIT COURT |
| | | [NO. 23DR-21-471] |
| DUDLEY HENRY | | HONORABLE DAVID M. CLARK, |
| | APPELLEE | JUDGE |
| | | AFFIRMED |

**MIKE MURPHY, Judge**

This is an appeal from the division of property attendant to a divorce. Appellant Debra Henry filed a complaint for divorce against appellee Dudley Henry on May 19, 2021, after twenty years of marriage. No children were born of the marriage. The parties had agreed to distribution of their property except for cattle, a tractor, and farmland. On appeal, Debra argues the circuit court erred in (1) finding the cattle to be premarital property; (2) awarding Dudley sole ownership of the tractor; and (3) setting aside a deed that transferred real property to her. We affirm.

I. *Background*

A final divorce hearing was held on June 5, 2023, and established the following. During the marriage, the parties lived on Dudley's family farm consisting roughly of 107 acres that was deeded to Dudley in 1996 from his father. On March 18, 2014, Dudley deeded

the land to himself and Debra as married persons. Before and during the marriage, Dudley used the real property to farm cattle. Dudley kept approximately fifty head of cattle at any time during his years of farming.

The parties testified they had each other's names on their respective bank accounts in the event of death, but otherwise they maintained separate bank accounts. Debra testified she was "not interested in his money in the bank." Debra earned a monthly paycheck and put money into a separate retirement account valued at approximately $14,000. Debra testified she paid certain bills for the house and contributed to the household but that she did not pay anything toward the upkeep of the cattle or the farm.

Dudley received income from farming cattle, operating a dump truck, and mineral rights, all of which he obtained prior to the marriage. Dudley testified he paid for everything pertaining to the cattle in addition to buying groceries and paying the utilities. He introduced his monthly bank statements from March through August 2021. This exhibit showed that Dudley was the only person who wrote checks from his account, and he wrote checks to Debra from it as well.

At one point during the marriage, Dudley traded a nonmarital tractor for a new tractor ("the 4040 tractor") and paid approximately $2,000 to make up the difference. He testified the $2,000 came from his bank account.

The parties did not start filing their taxes together until the last five or six years of their marriage. Debra testified Dudley never signed anything changing ownership of the

2

cattle operation to add Debra. The admitted tax documents from over the years showed that the "profit or loss from farming" document was only in Dudley's name.

Following the hearing, the court's order was reduced to writing and awarded the cattle, tractor, and land to Dudley. Specifically, the order stated

> CATTLE: The Court finds that the cattle were owned by the Defendant prior to marriage; the cattle were all preserved by the Defendant who paid for the feed for the cattle, veterinarian bills for the cattle and any other expenses pertaining to the cattle; and no cattle were purchased during the course of the marriage; all are the result of offspring of pre-marital cattle; therefore, the Court finds that the cattle are not marital property and belong solely to the Defendant with the Plaintiff holding no interest in the cattle. Further, the Plaintiff made no contribution to the upkeep of the cattle for feed, to acquiring the cattle made no contribution, veterinarian expense or any other form of contribution on maintaining the cattle such that if the Court did find the cattle to be marital, the Defendant would be entitled to unequal distribution of the cattle pursuant to Ark. Code Ann, 9-12-315 (a) (viii).

> TRACTOR: The Court finds that the 4040 Tractor purchased by the Defendant during the marriage was purchased with the exception of $2,000 money obtained through the sale of a 2950 John Deere Tractor that the Defendant owned prior to the marriage; thus, pursuant to Ark Code Ann 9-12-315 b (b) (2) since pre-marital property was exchanged for the 4040 and the Defendant paid the small difference coming from marital funds, the Court finds it to be equitable that the 4040 belongs solely to the Defendant.

> RETIREMENT: The Court finds that pursuant to Ark Code Ann 9-12-315 viii, although the 401K Retirement Account held by the Plaintiff accrued and vested during the course of the marriage from contributions made during the marriage from marital funds, the Plaintiff made all contributions from her earnings and is entitled to an unequal distribution; therefore, is awarded sole and exclusive ownership of the account free and clear of any lien or claim from the Defendant.

> REAL PROPERTY:

> . . .

> Regarding the real property, the Court finds that the Defendant owned the real property prior to the marriage with deed filed of record on December 10,1996 from Defendant's father; that the property had been held for generations by the

3

Defendant's family and passed on to the Defendant from his father and based upon the testimony of both parties, the Defendant had the Plaintiff's name placed on the Deed for her protection in the event that the Defendant died prior to the Plaintiff. The deed was filed of record on March 18, 2014 in Book Number 2014 Page Number 3481. The Defendant managed and preserved the property throughout the marriage without assistance from the Plaintiff; the Plaintiff expended no funds in acquisition, preservation, or appreciation of the property.

The Court finds that there is a presumption that property deeded to a spouse is a gift. The Court finds that the Defendant placing the Plaintiff's name on the Deed with his name was not a gift; but, rather was a form of estate planning based upon each parties' testimony that it was the Defendant's intent that the Plaintiff have the property in the event of his death prior to the Plaintiff's death, not his intent that the Plaintiff hold an interest in the property in event of divorce. Therefore, the Court finds that the Deed transferring an interest to the Plaintiff filed of record on March 18, 2014 Book Number 2014 Page Number 3481 by the Faulkner County Circuit Clerk should be set aside and held for naught and the property remains the sole property of the Defendant.

The Court further finds that even if the Court found the property to be marital, the Defendant should be entitled to it in totality due to Section 8 (unequal distribution) of Ark Code Ann 9-12-315.

Debra appealed, challenging the court's division of property.

## II. *Standard of Review and Applicable Law*

Domestic-relations cases are reviewed de novo on appeal, and the appellate court does not reverse a circuit court's finding unless they are clearly erroneous. *Taylor v. Taylor*, 345 Ark. 300, 47 S.W.3d 222 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000).

A court has broad powers to distribute property in order to achieve an equitable distribution. *Keathley v. Keathley*, 76 Ark. App. 150, 61 S.W.3d 219 (2001). The overriding purpose of the property-division statute is to enable the court to make a division of property that is fair and equitable under the circumstances. *Id.* This court acknowledges that the statute does not compel mathematical precision in the distribution of property; it simply requires that marital property be distributed equitably. *Wilcox v. Wilcox*, 2022 Ark. App. 18, at 4, 640 S.W.3d 408, 411.

The property-division statute defines marital property as "all property acquired by either spouse subsequent to the marriage" subject to certain exceptions. Ark. Code Ann. § 9-12-315(b) (Repl. 2020). All marital property shall be distributed one-half to each party unless the court finds such a division to be inequitable; if the property is not divided equally, then the circuit court must state the reasons and bases for not doing so, which should be recited in the order. *See Waldrip v. Waldrip*, 2025 Ark. App. 29, at 8, ___ S.W.3d___, ___. Further, the statute requires all other property be returned to the party who owned it before the marriage unless the court makes some other division that it deems equitable and provides its reasoning for doing so. Ark. Code Ann. § 9-12-315(a)(2).

In determining whether property remains under the control of one spouse upon divorce or is the property of both spouses, "tracing" may be used by the court. *McKay v. McKay*, 340 Ark. 171, 177–78, 8 S.W.3d 525, 529 (2000). "Tracing of money or property into different forms may be an important matter, but tracing is a tool, a means to an end, not an end in itself; the fact that one spouse made contributions to certain property does

5

not necessarily require that those contributions be recognized in the property division upon divorce." *Id.*

With these basic principles in mind, we turn to the court's division of property.[1]

## A. Cattle

Debra argues the court erred in finding the cattle to be premarital property and argues instead that they should have been classified as marital property. To support her argument, she directs us to the fact that the cattle-farming business was conducted with a bank account that was held in both parties' names. Accordingly, she contends this resulted in an inequitable distribution, and the court did not consider the appropriate factors to do so. We disagree that the mere designation of an account as a joint account, standing alone, is enough to categorize an account as marital or nonmarital, and therefore change the nature of a premarital asset.

Dudley owned the cattle before the marriage, and the cattle operation generated income that Dudley kept in an account that, while it had Debra's name on it, was used to sustain the cattle operation (feed, hay, veterinarian bills, etc.). Debra testified that Dudley paid for everything pertaining to the cattle. Moreover, even though Debra's name was on the account, evidence introduced showed that Dudley wrote checks to Debra from that account.

---

[1]Debra contends there are several places where the verbal order differs from the written order, but when there is a conflict between the written order and the court's oral comments, the written order controls. *See Alsina v. Hicks*, 2023 Ark. App. 485, at 5, 678 S.W.3d 449, 453.

In *McKay v. McKay*, 340 Ark. 171, 8 S.W.3d 525 (2000), we affirmed a circuit court's finding that a joint bank account was the husband's separate property where he alone controlled the expenditure of funds from it, the account was funded by his disability income, and when the wife expended funds from the account, it was with her husband's permission or at his direction. Similarly, in *Cole v. Cole*, 53 Ark. App. 140, 920 S.W.2d 32 (1996), we held that evidence was sufficient to overcome the presumption that a joint account was held by husband and wife as tenants by the entirety where the account was funded by the wife's inheritance money, the husband wrote four or five checks from the account with wife's permission, and they shared a different joint account in which they deposited their paychecks.

Turning to the cattle specifically, evidence established that Dudley had around fifty cattle in his herd when the parties married and that he maintained that amount over the years. He did not purchase any cows during the marriage but instead bred the ones he had and would occasionally sell from his herd.[2] Debra did not dispute that Dudley had about the same number of cattle when they first married. Dudley maintained the premarital cattle operation entirely from his account. We need not take a "cow by cow" approach, given the

---

[2]This is distinguishable from other "cattle cases" where the cattle were purchased during the marriage. *See Coombe v. Coombe*, 89 Ark. App. 114, 201 S.W.3d 15 (2005); *Thomas v. Thomas*, 68 Ark. App. 196, 4 S.W.3d 517 (1999). In *Coombe*, we reversed the court's finding that determined the cattle were nonmarital property. We explained the determinative factor in categorizing property is when the right to the property was acquired, and appellee testified he purchased the cattle while the parties were married. 89 Ark. App. at 119, 201 S.W.3d at 20. Similarly, in *Thomas*, we found the cattle to be marital property when appellee started a farming operation during the marriage. 68 Ark. App. at 208, 4 S.W.3d at 525.

nature of the operation over the years. Rather, we view the herd as a single asset. Under Arkansas Code Annotated section 9-12-315(b)(1), (5) and (7), property acquired before marriage, its increase in value, and any income derived therefrom is specifically excluded from the definition of "marital property."

Given this set of facts, we are not left with a definite and firm conviction that a mistake has been made.

## B. Tractor

Debra argues the court erred in awarding the 4040 tractor to Dudley when it was purchased, in part, with the same account that maintained the cattle operation. As with the cattle, Debra erroneously categorizes Dudley's account with her name on it as a marital account.

As explained above, property acquired in exchange for property acquired before the marriage is excepted from the general rule that all property acquired during a marriage is marital property. Arkansas Code Annotated section 9-12-315(b)(2). Here, Dudley exchanged a premarital tractor for the 4040 tractor, plus $2000. While the court stated that the $2000 came from marital funds, it found this amount so small that it was equitable to identify the tractor as premarital property. We acknowledge the court's mistake in taking this de minimis approach, however, the evidence demonstrated that the $2000 difference was paid from Dudley's account, which was funded by income from the premarital cattle operation. We may affirm the circuit court when it reaches the right result though it announced the wrong reason. *Wyatt v. Wyatt*, 2018 Ark. App. 177, at 9, 545 S.W.3d 796, 802.

## C. Land

Debra argues the court erred in setting aside the deed and awarding Dudley the farmland. She contends Dudley has not presented clear and convincing evidence that the deed was not a gift.

Once property is placed in the names of both husband and wife without specifying the manner in which they take, such property is presumed to be held by them as tenants by the entirety. *Thomas*, 68 Ark. App. at 203–04, 4 S.W.3d at 522. In order to rebut this presumption, the party claiming the property as separate property must present clear and convincing evidence that there was no intent to make a gift of the property to the spouse. *Id.*

In awarding Dudley the land, the court found that the quitclaim deed was not a gift "but, rather was a form of estate planning based upon each parties' testimony that it was [Dudley's] intent that [Debra] have the property in the event of his death prior to the [Debra's] death, not his intent that [Debra] hold an interest in the property in event of divorce."

Dudley deeded the land to himself and Debra thirteen years into the marriage. Dudley testified that he executed the deed because

> [s]he kept telling me that she didn't want to get left with nothing, . . . so I wanted, out of the goodness of my heart, to leave her something if I drop dead and which, in my health condition, I could. So I deeded the – put her name on the Deed.

He further testified, "Well, I didn't aim for her to take it away from me whenever we divorce." When asked what Debra said if they divorced, Dudley said her exact words were "that she would not take the farm away from me," and he trusted and believed her. Debra

denied making such a promise, but she acknowledged the deed was issued at a time "he was having blood pressure problems."

The most common argument made by spouses seeking to rebut the joint title gift presumption is a claim that the asset was jointly titled in order to avoid probate. 1 Brett R. Turner, *Equitable Division of Property* § 5:44 (4th ed.), Westlaw EDQP § 5:44. In Arkansas, if the evidence shows that the transferring spouse had only conditional donative intent, and the condition failed on the facts, a gift is not present. Brett R. Turner, *The Effect of Interspousal Transfers Upon Classification of Separate Property: A 2003 Update*, 15 No. 4 Divorce Litigation 61 (Apr. 2003), Westlaw 15 No. 4 DIVLIT 61; *see also Cole v. Cole*, 3 Ark. App. 140, 920 S.W.2d 32 (1996) (affirming court's finding that the joint title gift presumption was rebutted when wife placed husband's name on her separate property in return for his promise to make a new will, but husband failed to make the will).

By executing the quitclaim deed as a part of an estate-planning strategy, Dudley did not intend to give Debra a beneficial interest at any point short of his death. The circuit court was in the superior position to judge the credibility of the witnesses surrounding the execution of the deed. *See McCracken v. McCracken*, 2009 Ark. App. 758, at 8, 358 S.W.3d 474, 479 (trial court's finding that wife was coerced into quitclaiming her interest in the home was not clearly erroneous where the trial court accepted wife's testimony as more credible). Given the evidence in this case, it was not clearly erroneous for the court to find Dudley overcame the presumption that he deeded the land as a gift.

Affirmed.

VIRDEN and GLADWIN, JJ., agree.

*Dodds, Kidd, Ryan & Rowan*, by: *Catherine A. Ryan*, for appellant.

*Tim Cullen*, for appellee.